UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELLEN HEINE, JOHN AND JANE DOE 1 TO 10, ABC COMPANIES and/or ENTITIES 1 TO 10, JOSEPH FABICS, CHRIS GRIECO, JOHN F. MALONE, CAITLIN RUPPERT, RYAN MOSKOWITZ, and PAUL WONDOWSKY,<br><br>Plaintiffs,<br><br>v.<br><br>COMMISSIONER of the DEPARTMENT of COMMUNITY AFFAIRS of the STATE of NEW JERSEY, JOHN and JANE DOE 1 to 10, ABC COMPANIES and or ENTITIES 1 to 10, THE STATE OF NEW JERSEY, BERGEN COUNTY D.Y.F.S.,<br><br>Defendants. | Civ. No. 2:11-5347 (KM)(MCA)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court upon a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P 12(c), and in the alternative for summary judgment, pursuant to Fed. R. Civ. P. 56, brought by the Defendant, the Commissioner of the Department of Community Affairs of the State of New Jersey ("DCA" or the "Department"), Docket No. 40 ("Def. Br."). *Pro Se* Plaintiffs Ellen Heine and Joseph Fabics have opposed the motion. Docket Nos. 44, 46, 47, 48. For the reasons set forth below, I will dismiss the Complaint in its entirety as against DCA. Five of the six counts in the Complaint are barred by the Eleventh Amendment; the remaining count, No. 3, fails to state a claim.

## I. BACKGROUND

On September 14, 2011, Plaintiffs Ellen Heine, Joseph Fabics, Chris Grieco, John Malone, Caitlin Ruppert, Ryan Moskowitz, and Paul Wondowsky[1] initiated this matter in this Court. On December 9, 2013, Plaintiffs filed the Sixth Amended Complaint ("Complaint"), which is the currently operative pleading. That Complaint alleges six counts against DCA, all related to the Department's regulation of rooming and boarding homes in New Jersey.

Plaintiffs are alleged to be owners, beneficiaries, note holders, and tenants of 515 Van Bussum Avenue in Garfield, New Jersey, as well as members of the "Citizen's Homeowners Association." Plaintiffs are either owners or tenants of dwellings that were cited by the DCA for violations of the New Jersey Rooming and Boarding House Act ("RBHA"), N.J.S.A. 55:13B-1-16—specifically, for operating a rooming house without a license. The RBHA is administered by the DCA Bureau of Rooming and Boarding House Standards (the "Bureau").[2]

The Complaint alleges that the Bureau's regulatory enforcement of rooming and boarding houses in New Jersey is discriminatory and violative of federal and state law and the United States Constitution. The Complaint is brought against the Commissioner of DCA in his official capacity. Compl., Parties ¶ 2.[3] Plaintiffs have also named the State of New Jersey and the Bergen County DYFS as Defendants.[4] Plaintiffs seek eight million dollars in compensatory damages for these violations.

---

[1] Plaintiff Therese Ruppert was terminated on December 9, 2013.

[2] The RBHA specifically proscribes any individual from operating a rooming or boarding house "without [a] valid license to own or operate such a facility, issued by the Commissioner." N.J.S.A. 55:13B-7(a). Under the RBHA, a rooming house is a "boarding house wherein no personal or financial services are provided to residents." N.J.S.A. 55:13B-3(h). A rooming home contains two or more rooms that are intended for sleeping or dwelling that are not arranged for independent living. According to the DCA, determining whether two or more rooms are intended for such use can be done by simple inspection, while determining whether dwelling units are configured for independent living requires a more in depth inquiry of additional evidence.

[3] Each section of the Complaint begins anew with the numbering of paragraphs. Therefore, I refer both to the section and paragraph when referring to a specific paragraph of the Complaint.

[4] DYFS is the Division of Youth and Family Services. The State of New Jersey and

2

Plaintiffs bring claims under 42 U.S.C. Section 1983 (Counts 1, 2, 4, 6); the New Jersey Law Against Discrimination ("NJLAD") (Counts 1, 4, 5); the Americans with Disabilities Act ("ADA") (Count 3); and the Fair Housing Act ("FHA") (Counts 4, 5). All of them are pleaded solely as claims for damages. The six counts of the Complaint are as follows:

**(1)** The Department's regulatory actions are discriminatory, in violation of 42 U.S.C. § 1983, the NJLAD, N.J.S.A. §§ 10:5-12(g) (unlawful employment practice or unlawful discrimination) and 10:5-12.5(a) (discrimination in regulation of land use and housing) (Count 1);

**(2)** The Department's regulatory actions violate the Fourth and Fourteenth Amendments of the United States Constitution (Count 2);[5]

**(3)** The DCA's regulatory actions violate the ADA (Count 3);

**(4)** The DCA's enforcement discriminates against "individuals in their free expression of the family unit and family life," in violation of the FHA, 42 U.S.C. § 3601 *et seq.*, 42 U.S.C. § 1983, and the NJLAD §§ 10:5-12.5 and 10:5-12 (Count 4);

**(5)** The Department "is practicing discrimination and selective enforcement 'in the regulation of land use and housing'" in violation of the NJLAD, N.J.S.A. § 10:5-12.5(a), and is practicing "Hate Crimes of Marital Status Discrimination" in violation of the NJLAD, § 10:5-12(g) and the FHA (Count 5);

**(6)** The definitions of "boarding house" and "single room occupancy" under the RBHA are unconstitutional and the RBHA violates the Fourth and Fourteenth Amendments as well as "Federal Anti-discrimination and eviction laws" (Count 6).[6]

---

the Bergen County DYFS have not appeared or otherwise responded in this matter. It does appear from the docket that these parties have been served with the Sixth Amended Complaint.

[5]   In Counts 2 and 6, Plaintiffs allege that Defendants violated the Fourth and Fourteenth Amendments—allegations that must be brought, if at all, under 42 U.S.C. § 1983.

[6]   In Count 6, Plaintiffs also allege that Defendants have violated "other statutes, laws and processes in the state as well as . . . eviction laws as well as . . . Federal Anti-discrimination and eviction laws." Without more, the Court cannot infer what additional "laws" are referred to.

3

DCA submits that the Complaint must be dismissed because (1) the claims are barred by the Eleventh Amendment; (2) the claims have been adjudicated in state court and are therefore barred by the doctrines of res judicata and collateral estoppel; (3) there is no constitutional basis for the due process and illegal search claims; and (4) the state's actions were dictated by statute, not discriminatory animus.

DCA has submitted this motion as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). To the extent that the motion relies "upon matters outside the record, i.e., the State court actions," however, "the Department respectfully request[s] that the motion to dismiss be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56." Def. Br. at 8. As set forth below, I have declined that invitation to consider summary judgment, because there has not been an adequate opportunity for mutual discovery.

## II. DISCUSSION

### A. Standard of Review: Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Rule 12(c) is often indistinguishable from a motion to dismiss, except that it is made after the filing of a responsive pleading. Federal Rule of Civil Procedure 12(h)(2) "provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Accordingly, when a Rule 12(c) motion asserts that the complaint fails to state a claim, the familiar Rule 12(b)(6) standard applies. *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

4

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; see also *Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Here, Plaintiffs are appearing *pro se*. "Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n.6 (3d Cir. 1997)). I have construed these *pro se* litigants' pleadings and filings in that liberal spirit.

**B. Analysis**

### 1. Subject Matter Jurisdiction: Sovereign Immunity under the Eleventh Amendment

All the Counts of the Complaint assert claims against the Commissioner of the DCA in his official capacity. Plaintiffs do not seek injunctive relief; each count seeks monetary damages in the sum of eight million dollars. The DCA submits that all of the claims in the Complaint—under Section 1983, the FHA, the ADA, the NJLAD—are barred by the Eleventh Amendment. As to all claims but the ADA claim (Count 3), I agree; the Eleventh Amendment sovereign immunity bar applies, and this Court lacks jurisdiction to hear Counts 1, 2, 4, 5, and 6.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment is a jurisdictional bar that operates as a limit on the subject matter jurisdiction of a federal court.[7] *Rudolph v. Adamar of New Jersey*,

---

[7] As discussed, the Eleventh Amendment has long been interpreted to bar suits against any state in federal court by that state's own citizens, and by citizens of other states. See *Edelman v. Jordan*, 415 U.S. 651 (1974); *Hans v. Louisiana*, 134 U.S. 1, 15

*Inc.*, 153 F. Supp. 2d 528, 533 (D.N.J. 2001) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 119–20 (1984)). Despite its seemingly limited wording, "the Eleventh Amendment has been interpreted to bar suits against any state in federal court by that state's own citizens as well as suits by citizens of other states." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651 (1974); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

"There are three primary exceptions to Eleventh Amendment immunity: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 252 (3d Cir. 2005) (citation omitted; not precedential). A state's waiver must be "unequivocally expressed," *Pennhurst*, 465 U.S. at 99, and a state's waiver in its own courts does not constitute a waiver in the federal courts. *Petty v. Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 276 (1959). New Jersey's enactment of the Tort Claims Act, N.J.S.A. 59:1-1 *et seq.*, is a limited waiver of sovereign immunity that does not waive the state's Eleventh Amendment immunity. *Matter of Kahr Bros., Inc.*, 5 B.R. 765, 770, n.9 (Bankr. D.N.J. 1980) (citing *Ritchie v. Cahall*, 386 F.Supp. 1207, 1209-10 (D.N.J. 1974)).

I must first address whether the claims brought against the Commissioner of the DCA are considered claims against the State. Relevant case law clearly establishes that claims brought against the Commissioner in his official capacity are actually brought against the state for purposes of the Eleventh Amendment. Sovereign immunity extends to state agencies and departments "provided that the state is the real party in interest." *Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x 247, 250-51 (3d Cir. 2005) (not precedential) (citing *MCI Telecomm. Corp. v. Bell Atlantic–Pa. Serv.*, 271 F.3d 491, 503 (3d Cir. 2001)). By extension, "[t]he Eleventh Amendment also bars a suit against a state official in his or her official capacity because it 'is not a suit against the official but rather is a suit against the official's office. As such it is it is no different from a suit against the State itself.'" *Id.* (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)).

The Complaint is an action for damages. It explicitly asserts its claims against the Commissioner in his official capacity. Therefore, for purposes of

---

(1890). The defense of sovereign immunity is properly raised as a jurisdictional defect under Fed. R. Civ. P. 12(b)(1). Because this particular motion is directed to the face of the Complaint, the distinction between Rule 12(b)(1) and Rule 12(b)(6) or 12(c) has no practical consequences here.

analyzing Defendant's sovereign immunity arguments, I interpret these as claims for damages against the State of New Jersey.

### a. Section 1983 Claims

Counts 1, 2, 4, and 6 allege that the DCA's enforcement of the RBHA violates Plaintiffs' constitutional rights, in violation of 42 U.S.C. § 1983. Section 1983 provides that a civil action may be brought against any "person," who, "under color" of state law, "subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws." 42 U.S.C. § 1983. In *Edelman v. Jordan*, the Supreme Court reasoned that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury . . . ." 415 U.S. at 677. Therefore, Section 1983 does not waive the state's sovereign immunity from a suit for damages in federal court. *Id.* Where a party sues a state official, such as the DCA Commissioner, in his official capacity, the Eleventh Amendment bars claims for damages, which will ultimately be paid out of the state coffers. *See Garden State Elec. Inspection Servs. Inc. v. Levin*, 144 F. App'x at 250-51.

Accordingly, Plaintiffs' Section 1983 claims are barred by the Eleventh Amendment. These claims, which are raised in Counts 1, 2,[8] 4, and 6, will be dismissed.

### b. NJLAD Claims

Plaintiffs also bring several claims under the NJLAD. *See* Complaint Counts 1, 4, 5. Because the State of New Jersey has not waived its sovereign immunity with respect to NJLAD claims, they too must be dismissed pursuant to the Eleventh Amendment.

Any waiver of sovereign immunity must be express and unequivocal. Other judges of these Courts have persuasively held that, at least where the state is not sued in its capacity as an employer, New Jersey has not waived sovereign

---

[8] It is not entirely clear whether Count 2 also alleges a violation of the First Amendment, but the analysis would be the same. Such a constitutional claim must be brought against the state via Section 1983. Therefore, any First Amendment claim would also be barred by the sovereign immunity principle inherent in the Eleventh Amendment.

7

immunity in the NJLAD. *See e.g., Rudolph v. Adamar of New Jersey, Inc.*, 153 F. Supp. 2d 528, 542 (D.N.J. 2001) (noting that "[s]uits brought against the State as an employer are clearly within the scope of the explicit waiver of sovereign immunity contained in N.J.S.A. § 10:5–5(e); §§ 10:5–12(a),(c)). In *Rudolph*, the court found it "inconceivable that the legislature of New Jersey intended to waive the State's Eleventh Amendment immunity under the NJLAD and allow the State to be sued in federal court in its legislative or executive capacities, while expressly reserving its immunity in these capacities under the New Jersey Tort Claims Act." *Id.* at 543; *see also Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002) (holding that "a plaintiff may not sue the State of New Jersey, or its alter egos, under the NJLAD in federal court.").

There are no allegations in the Complaint that could be construed as NJLAD claims against the Commissioner of the DCA in his capacity as an employer. The Complaint alleges that Defendants, by virtue of the manner in which they administered the RBHA and regulations thereunder, violated Sections 10:5-12(g) and 10:5-12.5(a) of the NJLAD. And Plaintiffs, of course, do not sue as, and apparently are not, employees of the State.

I will dismiss the NJLAD claims raised in Counts 1, 4, and 5 on Eleventh Amendment grounds. This Court lacks subject matter jurisdiction to hear them.

### c. Fair Housing Act Claims

In Counts 4 and 5, Plaintiffs sue for damages under the FHA, alleging that DCA's enforcement practices have discriminated against individuals' "free expression of the family unit and family life," Compl., Count 4 ¶ 2; that the Department has "discriminated against small property owners who the DCA has targeted as illegal housing," Compl., Count 5 ¶ 3; and that the Department's regulatory and enforcement actions are tantamount to "Hate Crimes of Marital Status Discrimination," *id.* ¶ 6. These claims, too, must be dismissed on Eleventh Amendment grounds.

Congress may abrogate the states' Eleventh Amendment sovereign immunity "when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001). The Supreme Court, however, has "repeatedly expressed its distaste for lower courts 'running afoul of the unequivocal-expression requirement' of the Eleventh Amendment." *Gregory v. S. Carolina Dep't of Transp.*, 289 F. Supp. 2d 721, 725 (D.S.C. 2003), *aff'd*, 114 F. App'x 87 (4th Cir. 2004) (quoting *United States v. Nordic Vill.*, 503 U.S. 30, 38, (1992)); *see also Blatchford v. Native Vill. of Noatak*, 501 U.S. 775,

8

111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) (noting that a general jurisdictional grant does not suffice to show Congress abrogated a state's Eleventh Amendment rights).

It has repeatedly been held that Congress did not abrogate state sovereign immunity when it enacted the Fair Housing Act. See *Gregory v. S. Carolina Dep't of Transp.*, 289 F. Supp. 2d 721 (D.S.C. 2003); *Project Life, Inc. v. Glendening*, 139 F. Supp. 2d 703, 711 (D. Md. 2001) *aff'd*, 46 F. App'x 147 (4th Cir. 2002) (finding that the Eleventh Amendment precluded an award of damages against state officials for violation of the FHA, but allowing prospective injunctive relief); *Welch v. Century 21 Chimes Real Estate Inc.*, CV-90-3410, 1991 WL 29950, at *1 (E.D.N.Y. Feb. 27, 1991) ("Because plaintiff's complaint seeks money damages from DSLD [for a violation of the FHA], money which would come from the state treasury, the eleventh amendment acts to bar this suit."). Plaintiffs here set forth no argument to suggest that Congress intended to or did abrogate the state's immunity when it enacted the FHA.

Finding no unequivocal abrogation of the state's immunity in the FHA, I will also dismiss the FHA claims raised in Counts 4 and 5 for lack of subject matter jurisdiction.

### d. ADA claims

Count 3 alleges that the DCA has compromised individuals' "barrier free needs," in violation of the ADA. Compl., Count 3 ¶ 4. The Supreme Court has held that Congress, in enacting the ADA, did abrogate state sovereign immunity. *United States v. Georgia*, 546 U.S. 151, 154, 126 S. Ct. 877, 879, 163 L. Ed. 2d 650 (2006) (citing *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–364 (2001) and the ADA) (noting that the ADA specifically states that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.").

The Eleventh Amendment therefore does not bar Count 3 insofar as it asserts an ADA claim.

### 3. Whether Count 3 Adequately Alleges an ADA Claim

Because the Court has jurisdiction over Count 3, I consider whether that Count states a claim under the standards of Rules 12(b)(6) and 12(c). *See* Section

II.A, *supra*. Even granting Count 3 the liberal construction due a *pro se* pleading, I find that it does not meet the standards of *Twombly* and *Iqbal, supra*.

Count 3 alleges that the DCA's regulations and its enforcement practices relating to rooming houses violate individuals' "barrier free needs," contrary to the ADA. Compl., Count 3 ¶ 4. The Complaint does not specify under which part of the ADA Plaintiffs bring this claim, although it might be inferred that this is a claim under the "public entity" provisions of Title II of the ADA. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Few facts are alleged. Count 3 states that Defendants "have not provided any recommendations or information about available financing, both low cost and government subsidized, and programs for residential upgrades and construction of barrier free access." *Id.* ¶ 5. Plaintiffs also allege that the "inspections and enforcements" of rooming houses "completely ignore the rights of residents that are protected by" the ADA, *id.* ¶ 2, and that "inspections have neglected to include ADA barrier free recommendations [that] are provided for by law." *Id.* ¶ 3.

The Complaint does not identify the alleged source of, *e.g.*, this duty to provide "recommendations or information" about financing of accessibility improvements. It does not state the nature of any exclusion, denial, or discrimination on the basis of disability. Nor does it suggest how the state-law requirement that boarding houses be licensed would relate to such a claim.[9]

---

9     Plaintiffs' allegations with regard to barrier free access seem to borrow concepts from Title III of the ADA. Under Title III, no individual may discriminate on the basis of a disability with regard to the full and equal enjoyment of public accommodations. New construction must be in compliance with the ADA's barrier free access guidelines. As to existing construction, the owner of a public accommodation must remove barriers where such removal is "readily achievable." 42 U.S.C. § 12182.

Under Title III, the onus is on the party who opens an accommodation to the public to ensure compliance. Thus Plaintiffs themselves, as operators of boarding houses, would seem to be the responsible parties. The State, by virtue of requiring a license to operate a boarding house, should not be deemed to take on the responsibilities of an owner. Nor has this Court found any case law to the effect that the State, as a licensing entity, must assist operators with ADA compliance or disseminate information about opportunities for financing of access improvements.

In short, Count 3 does not identify a potential legal basis for liability and it does not state facts that plausibly suggest that a defendant is liable. Count 3 will be dismissed for failure to state a claim.

In light of the foregoing, I do not discuss DCA's remaining contentions, such as claim preclusion or issue preclusion.

### III. CONCLUSION

For the foregoing reasons, the Sixth Amended Complaint is dismissed in its entirety as against the Commissioner of the Department of Community Affairs of the State of New Jersey, which is the movant and is apparently the only defendant that has been served. That dismissal is without prejudice to the filing of a properly supported motion to amend the complaint, which attaches a proposed Seventh Amended Complaint and explains how such a pleading would remedy the deficiencies identified in this Opinion. I caution the Plaintiffs, however, that Counts 1, 2, 4, 5, and 6 were dismissed for lack of jurisdiction, not for mere deficiencies in pleading. If no motion to amend the Complaint is filed within 30 days, this dismissal will become final.

An appropriate order will be filed with this Opinion.

Dated: August 22, 2014

**KEVIN MCNULTY**
**United States District Judge**

---

True, the ADA requires that the federal agencies responsible for issuing ADA regulations provide "technical assistance," including the dissemination of information "to assist the public, including individuals protected by the ADA and entities covered by the ADA." *U.S. Department of Justice, Title III Highlights*, www.ada.gov/t3hilght.htm. That informational duty is placed on the federal, not the state, government. Moreover, the regulations make it clear that "[a] public accommodation or other private entity shall not be excused from compliance with the requirements [of Title III] because of any failure to receive technical assistance, including any failure in the development or dissemination of any technical assistance manual authorized by the Act." 28 C.F.R. § 36.507. Even as to government entities that clearly are charged with the burden of administering the ADA, noncomplying individuals cannot shift liability in the manner attempted by Plaintiffs here. *A fortiori*, they cannot do so as to a state licensing entity that has no particular duties or functions with respect to administering the ADA.