## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ELLEN HEINE, et al.**<br><br>          **Plaintiffs,**<br>     **v.**<br>**COMMISSIONER OF THE DEPARTMENT OF COMMUNITY AFFAIRS OF THE STATE OF NEW JERSEY et al.,**<br><br>          **Defendants.** | Civ. No. 2:11-5347 (KM)(JBC)<br><br>**OPINION** |

Now before the Court is the motion of the Department of Community Affairs of the State of New Jersey (the "DCA"), by its Commissioner, to dismiss the Seventh Amended Complaint ("7AC")[1] for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). This complaint, generally speaking, takes issue with the manner in which New Jersey regulates rooming and boarding houses. For the reasons set forth below, I will dismiss much of the Seventh Amended Complaint, preserving only certain claims for injunctive relief against the

---

[1]       For purposes of this opinion, citations to the record will hereinafter be abbreviated as follows:

- "7AC" – Seventh Amended Complaint (ECF No. 81)
- "6AC" – Sixth Amended Complaint (ECF No. 35)
- "6AC Op."– Opinion dismissing Sixth Amended Complaint dated Aug. 22, 2014 (ECF No. 50), *Heine v. Comm'r of Dep't of Cmty. Affairs of New Jersey*, No. CIV. 2:11-5347 KM, 2014 WL 4199203, at *6 (D.N.J. Aug. 22, 2014), *reconsideration denied sub nom. Heine v. Comm'r of the Dep't of Cmty. Affairs of New Jersey*, No. CIV. 2:11-5347 KM, 2015 WL 4591337 (D.N.J. July 28, 2015)
- "Pl Br." – Plaintiff's Objection to Defendant's Motion to Dismiss the Seventh Amended Complaint (ECF No. 92-1)
- "Def. Br." —Brief in Support of Defendant's Motion to Dismiss the Seventh Amended Complaint (ECF No. 83-1)
- "Def Reply" —Reply Brief in Support of Defendant's Motion to Dismiss the Seventh Amended Complaint (ECF No. 94)

Commissioner. This Opinion is supplemental to prior opinions dismissing the Sixth Amended Complaint (6AC Opinion, ECF no. 50) and denying reconsideration (ECF no. 73), and should be read in conjunction with those earlier Opinions.[2]

## Background

The plaintiffs, Ellen Heine, *et al.*, identify themselves as "occupants and tenants and beneficiaries" of certain buildings in Garfield and New Brunswick, New Jersey; some of them are alleged to be members of a "Citizen's Homeowner's Association." (7AC ¶ 1) They allege that they have some relation to a dwelling or dwellings regulated as rooming houses by the DCA, and/or closed based on code violations and fire hazards. Plaintiffs filed the 7AC against the Commissioner in his official capacity, and have also named as defendants the Bureau of Rooming and Boarding House Standards ("BRBHS")[3], the Bergen County Division of Youth and Family Services ("DYFS"), "other NJ state agencies and entities," J.P. Morgan Chase, N.A., and John Doe persons and entities.

### Prior Court Decisions

As background, I cite three prior decisions, two in State court and one in federal court, which to some extent clarify the acts and transactions to which the 7AC is referring.[4] The 7AC involves other plaintiffs and claims, but Plaintiff

---

[2]     In response to a prior motion of the Commissioner, I dismissed Plaintiffs' Sixth Amended Complaint (the "6AC") in its entirety (*see* ECF Nos. 50–51 (6AC Op. and Order)). That dismissal, however, was without prejudice to the filing of a properly supported motion to file a Seventh Amended Complaint. (ECF nos. 50, 51) *See infra.*

[3]     The BRBHS is an office within the DCA. (*See* 6AC Opinion at 2.) When I filed my 6AC Opinion on August 22, 2014, it appeared that no named defendant but the Commissioner had been served or had filed an appearance. My review of the docket reveals no change in that situation.

[4]     These decisions constitute relevant procedural history, and are of public record. The Court may take judicial notice of the existence of these opinions on a motion to dismiss. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999).

Heine's situation with respect to her building in Garfield appears to have been the genesis of this federal complaint.

The first decision is Heine's appeal from separate court orders which, after trial, fined her $1500 for refusing to allow warrantless inspections, and fined her $1750 for maintaining three hazardous conditions in and around her Garfield building. *State v. Heine*, 424 N.J. Super. 48, 35 A.3d 691 (N.J. Super. Ct. App. Div. 2012). The Appellate Division agreed with Heine that the local ordinance, as applied, was unconstitutional insofar as it punished Heine's refusal to permit a warrantless inspection. However, it rejected Heine's challenge to the Garfield property maintenance code as vague, and likewise rejected her claim of selective enforcement.

The second decision involves the DCA's determination that plaintiff Heine's Garfield building was an unlicensed rooming house:

> Petitioner Ellen Heine appeals from the August 11, 2011 final decision of the Commissioner of the New Jersey Department of Community Affairs (Department). The Commissioner adopted the initial decision, dated July 14, 2011, of the Administrative Law Judge (ALJ), Barry E. Moscowitz.
>
> This action concerns a property where petitioner and five or six other persons resided. The property, on Van Bussum Avenue in Garfield, had been cited for violations of the construction code and fire safety laws. In September 2010, the Commissioner notified petitioner that she was in violation of the Rooming and Boarding House Act of 1979, N.J.S.A. 55:13B–1 to –16. Petitioner requested and received a hearing, which took place before the ALJ on January 8, March 15, and May 17, 2011, followed by the submission of briefs.
>
> In his initial decision, the ALJ determined that the property was a "rooming house" under N.J.S.A. 55:13B–3(h), and that petitioner was its primary owner under N.J.S.A. 55:13B–3(f), but that she did not have a valid license to operate a rooming house, and no licensed operator was available as required under N.J.S.A. 55:13B–8. Pursuant to that provision, the ALJ deemed petitioner to be the operator, found her responsible for the failure to comply, see N.J.S.A. 55:13B–10(a), and determined that a $5,000 civil penalty was appropriate under N.J.S.A. 55:13B–10(b).

*Heine v. Dep't of Cmty. Affairs, Bureau of Rooming & Boarding House Standards,* No. A-2113-11T1, 2013 WL 1759919, at *1 (N.J. Super. Ct. App. Div. April 25, 2013). The Appellate Division affirmed DCA's final decision that Heine failed to comply with a state statute requiring a license to operate a rooming house and assessing a $5,000 civil penalty. It considered Heine's argument that the State's definition of a rooming house is discriminatory and unconstitutional, but found it lacked sufficient merit to require discussion in a written opinion.

The third decision was entered by now-retired District Judge Faith S. Hochberg of this Court. *Schildknecht v. Township of Montclair,* 2014 WL 835790 (D.N.J. March 4, 2014). There, Ann Schildknecht and Ellen Heine, both plaintiffs in this action, filed a complaint against the Township of Montclair for damages and injunctive relief. "[T]he Court denied Plaintiffs' request for a preliminary injunction on the basis that Plaintiffs did not show a likelihood of success on the merits—indeed, the Township's filings showed that Schildknecht's deplorable and dangerous living conditions necessitated emergency intervention by the police, the fire department, and animal control." *Id.* at *1. Judge Hochberg then considered the Township's motion to dismiss the second amended complaint, which asserted claims under § 1983 and the Fair Housing Act. It also stated that the Township discriminated against Schildknecht based on her disability. The Court found, *inter alia,* that none of these causes of action were supported by plausible factual allegations and granted the motion to dismiss.

### Allegations of the 7AC

The following is a summary of the major allegations of the 7AC.

*Count 1:* The DCA definition of a rooming house relies on the presence of more than "two unrelated people living together." *See* N.J. Stat. Ann. § 55:13B-3. (The statutory and regulatory background is discussed at 6AC Op. pp. 2–4.) This, say Plaintiffs, is "discriminatory" against "individuals who live alone," and contrary to the "diversity of family living" as recognized in the Fair Housing Act.

4

(*Id.* ¶¶ 7, 13) The DCA has allegedly "allowed" discriminatory local housing enforcement practices. (*Id.* ¶¶ 9–11) Count 1 contains a catalogue of possible injuries that might be suffered by various persons, depending on their individual situations, as a result of the DCA's approach. Local fire safety inspections are alleged to be performed pursuant to an agency relationship with the DCA's Division of Fire Safety.

These generalities aside, Count 1 alleges that two buildings—one owned by Plaintiff Heine, and the other by Plaintiff Unita Peri-Okonny—were closed or demolished. The sense of the allegations is that this would not have occurred but for the heightened level of oversight given to rooming houses by the DCA. The Commissioner's regulations and enforcement tactics allegedly resulted in discrimination and violation of Plaintiffs' constitutional and statutory rights, including "rights to and participation in the peaceful enjoyment of the property." (7AC at 5.)

*Count 2*: This count alleges that the inspection and assessment techniques of the DCA and BRBHS violate due process and the FHA. The allegations are difficult to follow, and they invoke multiple statutes, legal concepts, and provisions of the Constitution. The Count contains no factual allegations *per se*; rather, it characterizes the practices of the DCA as violative of rights.

*Count 3*: This count is confined to the Americans with Disabilities Act. It alleges that inspections (inspections by the DCA, apparently) have neglected to survey the residents' handicaps or discuss recommendations of "barrier free" accommodations; that DCA inspections include, or lead to, the application of fire code standards that apply to rooming houses, as opposed to individual homes; that the State has a "double standard" regarding the handicapped; and that it inspects rooming house properties simply to assess fines, instead of offering counseling and financing for handicapped access improvements.

*Count 4*: This count alleges that the DCA discriminates against individuals and their free expression of the family unit and family life. The

5

reference is evidently to the rooming house standard, which refers to unrelated individuals. One plaintiff, Fabics, is alleged to have been told that sharing his apartment with more than one other unrelated person would lead to his home in New Brunswick being closed (again, apparently in reference to the rooming house standard). He elected to comply, however. Application of the rooming house regulation also resulted in the closing of Peri-Okonny's home, as well as that of Heine.

*Count 5*:  This Count alleges that the State's promotion of the building of group homes discriminates against small property owners who do not run facilities for those with mental health needs. The allegations of discrimination against various forms of family units are repeated and elaborated on. The DCA's application of its definition of rooming house, both in regard to unrelated persons, and in other respects, is deemed fraudulent.

*Count 6*: This Count, too, attacks the definition of a rooming house. The DCA is alleged to perform a *de facto* "zoning change" which contradicts the common "one to four family rider" in home mortgages and jeopardizes mortgage status. The properties are alleged to be subject to foreclosure. Although local inspectors were involved, the DCA is alleged to be behind the closures of the properties. By denying access and leaving windows open, DCA is causing further damage to Heine's Garfield property.

*Count 7*: This Count is directed only against J.P. Morgan Chase Bank, as mortgagee of the Heine and Peri-Okonny properties. J.P. Morgan Chase Bank has not been served and has not appeared in this action. Count 7 is not involved in this motion, and I do not discuss it further.

**Causes of Action in the 7AC**

Plaintiffs allege claims under the New Jersey Law Against Discrimination ("NJLAD"), the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983 for violation of the U.S. Constitution and other federal rights. They seek $800 million in damages, reimbursement of certain costs and fines, costs of suit, declaratory relief in the form of proposed

improvements to the state of boarding house regulation in New Jersey, restitution of Constitutional rights, and injunctive relief. (*See generally* 7AC.)

The 6AC asserted similar claims, but sought only damages. On August 22, 2014, I dismissed all six counts of the 6AC. (6AC Op. *7) I held that five of the six counts (counts 1, 2, 4, 5, and 6) were barred by the Eleventh Amendment, which immunizes the State and its agencies from suits seeking monetary damages, subject to exceptions inapplicable here. (*Id.* *3–7.) I therefore dismissed those five counts for lack of subject matter jurisdiction. (*Id.* *6-7). However, as to 6AC Count 3, which sought relief under the Americans with Disabilities Act ("ADA"), I held that the Eleventh Amendment jurisdictional bar did not apply, because Congress abrogated state sovereign immunity when it enacted the ADA. (*Id.* (citing *United States v. Georgia*, 546 U.S. 151, 154 (2006)).) I nevertheless dismissed Count 3 because it failed to state claim on which relief could be granted. (*Id.* 6–7.)

On July 28, 2015, I denied Plaintiffs' motion for reconsideration of my dismissal of the 6AC. *Heine v. Comm'r of the Dep't of Cmty. Affairs of New Jersey*, No. CIV. 2:11-5347 KM, 2015 WL 4591337, at *1 (D.N.J. July 28, 2015) (ECF No. 74).

In support of this motion to dismiss the 7AC, the Commissioner contends that I dismissed counts 1, 2, 4, 5, and 6 of the 6AC with prejudice, and that therefore only Count 3 remains in play. (*See* Def. Br. 10-11; Def. Reply 1–3.) That is not quite accurate. The 6AC Opinion states:

> [D]ismissal is without prejudice to the filing of a properly supported motion to amend the complaint, which attaches a proposed Seventh Amended Complaint and explains how such a pleading would remedy the deficiencies identified in this Opinion. I caution the Plaintiffs, however, that Counts 1, 2, 4, 5, and 6 were dismissed for lack of jurisdiction, not for mere deficiencies in pleading. If no motion to amend the Complaint is filed within 30 days, this dismissal will become final.

(6AC Op.; *see also* ECF No. 51 (Order containing similar language).)

A dismissal on grounds of lack of subject matter jurisdiction is not a disposition on the merits. It therefore would not ordinarily be considered a dismissal with prejudice. *See Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577, 580–81 (3d Cir. 2007) (non-precedential) ("Where a district court lacks subject-matter jurisdiction, its 'disposition of such a case will . . . be *without* prejudice.'" (citing *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir.1997)).[5] While Plaintiffs could not, of course, circumvent my jurisdictional ruling by simply reasserting the same claims, they remained free to reformulate their claims in an attempt to remedy the jurisdictional defect.

Following the dismissal of the 6AC, Plaintiffs filed a timely but procedurally defective motion to amend. (*See* ECF Nos. 79–80.) Following additional filings and communications between the parties and Court, on March 21, 2016, Magistrate Judge Clark granted Plaintiffs' motion to file their Seventh Amended Complaint. (ECF no. 80) I therefore review the 7AC with an eye to determining whether any of its counts—not just Count 3—state a claim.

The Seventh Amended Complaint (ECF no. 83) asserts many of the same allegations as the Sixth, but is not identical to it. Counts 1, 2, 4, 5, and 6, as before, assert claims under 42 U.S.C. Section 1983, the New Jersey Law Against Discrimination ("NJLAD"), and/or the Fair Housing Act ("FHA"). [6]

---

[5]    In a similar vein, the DCA Commissioner's argument that Counts 1, 2, 4, 5, 6, and 7 are precluded under the doctrines of *res judicata* and collateral estoppel (Def. Br. 10), is without merit. *Res judicata* (also known as claim preclusion in the sense that the Commissioner uses the term) arises where, *inter alia*, there has been an entry of a final judgment on the merits. Collateral estoppel (also known as issue preclusion) may apply where, *inter alia*, a court is presented with an issue of fact or law that was previously adjudicated on the merits and actually litigated. A judgment that subject matter jurisdiction is lacking is not a judgment on the merits and does not lay the groundwork for application of either doctrine. *See Alston v. Parker*, No. CIV. 95-6158 (WHW), 2007 WL 1349303, at *4 (D.N.J. May 2, 2007) ("Res judicata includes both issue preclusion and claim preclusion. . . . Courts in this Circuit and others have routinely held that where a complaint is dismissed without prejudice, the doctrine of res judicata does not apply.") It is simply a statement that the Court will not hear the merits because it lacks the power to do so.

[6]    Because Plaintiffs cite to the same laws throughout Counts 1, 2, 4, 5, and 6, and because the facts alleged are often redundant or related throughout these counts as well, this opinion's discussion is organized by topic, not by count.

Count 3 again asserts a claim under the ADA, adding some seven new paragraphs of factual allegations. Where the 6AC asserted only damages claims, the 7AC adds claims for injunctive and declaratory relief, with the evident intent of avoiding the Eleventh Amendment bar that resulted in the dismissal of much of the 6AC.[7]

## Legal Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted.[8] The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

---

[7]     Although this is the Seventh Amended Complaint, this is only the second time the Plaintiffs' allegations have been tested by a motion to dismiss. A word of explanation is in order.

Amended Complaints One through Four chiefly involved addition of parties and like matters. Filed in fairly rapid succession, they presented a moving target, and the Commissioner never filed an answer or motion in response to them. The case was reassigned to me as of August 1, 2012, and the Fifth Amended Complaint (ECF no. 14) was filed shortly thereafter. On November 30, 2012, I entered an order that no further amended complaints be filed without leave of court. (ECF no. 15) The Commissioner's answer to the Fifth Amended Complaint (ECF no. 20) was thus the first answer or motion in response to a complaint filed in this action. On December 9, 2013, then-Magistrate Judge Arleo granted Plaintiffs' motion to file a Sixth Amended Complaint. (*See* ECF nos. 34, 35.) I granted the Commissioner's motion to dismiss the 6AC, and the 7AC, to which this motion is directed, followed.

[8]     The DCA's notice of motion states that this is a motion to dismiss under Fed. R. Civ. P. 12(b)(6), but elsewhere the DCA refers to it as one for judgment on the pleadings. Because this motion is filed in advance of an answer to the 7AC, it is properly regarded as a motion to dismiss. To the extent it seeks dismissal based on the Eleventh Amendment, a jurisdictional issue, it should technically be considered a motion under Fed. R. Civ. P. 12(b)(1), but because it relies solely on the face of the complaint, the standard is the same. *See Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Where the plaintiff is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

## Analysis

### 1. Eleventh Amendment: Subject Matter Jurisdiction

As I explained in my August 22, 2014 Opinion dismissing the 6AC, all of the claims for damages against the DCA, except for the ADA claim, were barred by the Eleventh Amendment. (*See* 6AC 6–7.) The 7AC, however, adds requests for declaratory and injunctive relief based on alleged violations of federal law. Those allegations potentially invoke one of the three primary exceptions to

10

Eleventh Amendment immunity: "suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Garden State Elec. Inspection Servs. Inc. v. Levin,* 144 F. App'x 247, 252 (3d Cir. 2005) (citation omitted; not precedential); *see* discussion in 6AC Opinion at 5–9. The Eleventh Amendment permits a suit for prospective injunctive relief and associated costs against a state official, even in his or her official capacity, because "official-capacity actions for prospective relief are not treated as actions against the State."[9] *Kentucky v. Graham,* 473 U.S. at 167 n.14, 105 S. Ct. at 3106 n. 14; *Ex parte Young,* 209 U.S. 123, 159–160, 28 S. Ct. 441, 453–454 (1908) ("If the act which the state [officer] seeks to enforce be a violation of the Federal Constitution, . . . he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."); *Edelman v. Jordan,* 415 U.S. 651, 664–71, 94 S. Ct. 1347, 1356–60 (1974) (when plaintiff sues state official for violation of federal law, court may enjoin official's future conduct, but may not grant retrospective monetary relief that state will pay).

The scope of this exception is not unlimited, however. Even a claim that nominally seeks injunctive or declaratory relief will not circumvent the Eleventh Amendment prohibition if, in its actual substance, it seeks retrospective relief. Thus a Court will look past any mere form of words used in the complaint: "In determining whether the *Ex parte Young* doctrine avoids an

---

[9]     In my prior opinion, I noted that the 6AC explicitly named the Commissioner in his official capacity. That express designation has been dropped from the 7AC. Plaintiffs have given no indication, however, that they are suing the Commissioner in his personal capacity; they have not, for example, provided even the name of a particular individual or stated what that individual's involvement was at the time of the events complained of. Nor do the Commissioner's submissions give any indication that this suit is understood as one against an individual in that individual's personal capacity. The "course of pleadings" test therefore dictates that I continue to consider this an "official capacity" suit. *See Garden State Elec. Inspection Servs. Inc. v. Levin,* 144 F. App'x 247, 251 (3d Cir. 2005) (applying the "course of pleadings" test to ascertain whether a government official was sued in her personal or official capacity). Thus, monetary damages remain unavailable under Eleventh Amendment immunity principles, but prospective injunctive and declaratory relief theoretically remain available.

Eleventh Amendment bar, the Supreme Court has made it quite clear that 'a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Rich v. New Jersey,* No. CIV.A. 14-2075 FLW, 2015 WL 2226029, at *9 (D.N.J. May 12, 2015) (quoting *Hess,* 297 F.3d at 324 (quotation omitted)).

By the same token, even an action purportedly against a State officer will not survive Eleventh Amendment scrutiny if the real party in interest is the State: "[I]f, although the action is nominally against individual officers, the state is the real, substantial party in interest and the suit in fact is against the state," the Eleventh Amendment immunity will nevertheless apply. *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 324 (3d Cir. 2002) (quoting *Pennhurst State School & Hosp v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908 (1984)). As the Supreme Court explained in *Pennhurst*:

> The Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). See, *e.g., In re Ayers,* 123 U.S. 443, 487–492, 8 S.Ct. 164, 173–176, 31 L.Ed. 216 (1887); *Louisiana v. Jumel,* 107 U.S. 711, 720–723, 727–728, 2 S.Ct. 128, 135–137, 141–142, 27 L.Ed. 448 (1882). Thus, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (*per curiam*). And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. See *Cory v. White,* 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982).

465 U.S. at 102. In *Pennhurst,* the Court further explained that "a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel

it to act.'" *Id.* at 102 n.11 (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006 (1963)).

Here, each count in the 7AC seeks "[i]injunctive relief against the actions, omissions, and errors of the State of NJ and their agents and employees and contract providers and workers." Construed in the liberal spirit appropriate in a *pro se* case, this prayer for relief adequately sets for a prospective claim.

The Commissioner seizes on the Plaintiffs' failure to specifically refer to the Commissioner of the DCA (as opposed to the State generally) in the requests for injunctive relief. But the Commissioner, not the State, is the party named as a defendant. And just prior to the language seeking injunctive relief in each count, there is a specific reference to the Commissioner: "WHEREFORE Plaintiffs demand judgment against the Commissioner of the [DCA], and for other State agencies as applicable:" I therefore construe Plaintiffs' claims for injunctive relief to apply to the Commissioner in his official capacity. The Eleventh Amendment does not bar this Court's jurisdiction over such a claim.

The 7AC also adds a prayer for "[r]estitution of the First, Fourth, Fifth, Eighth, and Fourteenth Amendment Constitutional rights guaranteed by the Federal Civil Rights Act of 1871, Title 42 USC § 1983." (7AC, all counts). The significance is obscure. To the extent it may refer to the equitable remedy of restitution, it is barred by the Eleventh Amendment; the Supreme Court has held that restitution is retrospective, and does not fall into the *Ex Parte Young* exception. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347 (1974). I actually read the language more generally, however—perhaps as a general prayer for restoration of the rights of which Plaintiffs have allegedly been deprived. So understood, however, it adds nothing to the monetary or injunctive relief requested elsewhere. At any rate, such language is too general and nonspecific to state a cognizable claim. I therefore hold that the "restitution" claim fails for lack of jurisdiction, or in the alternative for failure to state a claim.

Yet another addition Plaintiffs have made in the 7AC is a request for declaratory or injunctive relief as to a number of affirmative corrective actions the Plaintiffs believe the State of New Jersey should take or implement. These,

too, fall under the Eleventh Amendment bar on actions against the State. I cannot compel the adoption of housing laws and regulations, however beneficial or advisable.

Plaintiffs' proposals include, *inter alia*: setting up programs and funding for persons affected by rooming house regulations, instituting use of special forms for enforcement, requiring DCA departments or other agencies to report when houses are closed, implementing a framework of document retention for purposes of preserving affected persons' ability to litigate, assigning a social worker to affected individuals, providing relocation and housing allowances to affected residents, and implementing specific training techniques for State employees engaged in enforcing housing regulations. (*See* 7AC Count 1, a–i). True, the Commissioner has rulemaking authority within the ambit of rooming and boarding house regulations that govern "safety, security, recordkeeping, living conditions, and services." *see* N.J. Stat. Ann. § 55:13B-4. These requests, however, are in substance aimed at the State of New Jersey, and they do not seek the cessation of unlawful conduct, but revision of the State's policy choices regarding housing. They run afoul of the rule that a federal court lacks jurisdiction in a suit brought by an individual to compel a state to act. *See supra.*

To the extent these proposals rest on state law—and it appears that they are very substantially based on the Plaintiffs' conception of what State law is or should be—they have another Eleventh Amendment defect. The Eleventh Amendment bars this Court from considering claims for prospective relief against state officials on the basis of state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S. Ct. 900, 911 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law."). The fact that

Plaintiffs now seek injunctive relief against the Commissioner does not rescue their NJLAD or other state law claims from sovereign immunity.

The upshot of the above analysis and my 6AC Opinion is the following: The only injunctive and declaratory relief claims in the 7AC that survive Eleventh Amendment scrutiny are federal-law claims against the Commissioner under § 1983, the FHA, and the ADA.[10]

### 2. Whether 7AC States Claims under ADA, FHA, or § 1983

#### a. The ADA

The 7AC asserts claims for both damages and injunctive relief under the ADA. I interpret the ADA claim as one under Title II,[11] which provides that "no

---

[10]     The case law corroborates this result. *See, e.g., Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10, 109 S.Ct. 2304, 2312 n.10 (1989) (the Eleventh Amendment does not prohibit official-capacity § 1983 actions for prospective relief); *Schoenstein v. Constable*, No. 13–6803 (JAP), 2014 WL 6685409 (D.N.J. Nov. 26, 2014) (dismissing claims for injunctive relief under NJLAD against Commissioner of the DCA in his official capacity for lack of jurisdiction under the Eleventh Amendment, but addressing FHA and ADA injunctive claims on the merits).

     As I explained in my 6AC Opinion, other judges in this district have interpreted NJLAD to abrogate sovereign immunity for suits brought against the state of New Jersey as an employer. (6AC Op. *5.) But, like the 6AC, the 7AC contains no allegations that could be construed as a claim against the DCA Commissioner in his capacity as an employer. Thus, this Court again lacks jurisdiction to hear Plaintiffs' NJLAD claims. *See Garcia v. The Richard Stockton College of New Jersey*, 210 F.Supp.2d 545 (D.N.J. 2002) ("[A] plaintiff may not sue the State of New Jersey, or its alter egos, under the NJLAD in federal court.").

[11]     The crux of Plaintiffs' grievance under the ADA seems to be the State's failure to assist private owners of public accommodations with funding and recommendations for meeting "barrier free need" standards. The foundation of such a claim, to the extent it seeks damages, is unclear.

     Title I pertains to discrimination in employment and thus bears no relation to Plaintiffs' allegations. *See generally* 42 U.S.C. §§ 12111–12117.

     The 7AC and Plaintiffs' brief cite Title III. (*See* Pl. Br. 5–7 (alleging that the DCA's enforcements should encompass instruction as to compliance with 42 U.S.C. 12182 and 12183).) Title III, however, authorizes only injunctive relief in a suit brought by a private plaintiff. *See* 42 U.S.C. § 12188; *Bowers*, 475 F.3d at 532. More fundamentally, as explained in my prior Opinion (*see* 6AC Op. *7 n.9), Title III liability is directed to private owners of public accommodations; it does not authorize such a suit against the State or its officers. *See Bowers*, 475 F.3d at 531 n.4. Therefore, although Eleventh Amendment issues are not applicable to the extent Plaintiffs

qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Injunctive relief against the Commissioner, as stated above, is not barred by the Eleventh Amendment. As for damages claims, as held previously, Title II of the ADA does abrogate Eleventh Amendment immunity—at least to the extent Count 3 has stated a claim for actual violations of rights guaranteed under the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 882, 163 L. Ed. 2d 650 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity"); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 556 (3d Cir. 2007) (*amended on reh'g* Mar. 8, 2007); *Gattuso v. New Jersey Dep't of Human Servs.*, 881 F. Supp. 2d 639, 647–48 (D.N.J. 2012).

A Title II plaintiff must demonstrate that: "(1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 118 F. Supp. 2d 494, 511 (D.N.J. 2000), *opinion amended on reargument*, 130 F. Supp. 2d 610 (D.N.J. 2001); *accord Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007). To satisfy the fourth prong, "a plaintiff must establish a causal connection between his or her disability and the alleged discrimination." *Id.* at 511–12.

In my 6AC opinion, I determined that Plaintiffs had failed to state a claim under Title II:

---

allegations pertain to Title III, Plaintiffs again fail to state a claim for a Title III violation in the 7AC.

Thus I conclude, as I did in the 6AC Opinion, that Title II is most relevant here.

> The [6AC] does not identify the alleged source of, *e.g.,* this duty to provide "recommendations or information" about financing of accessibility improvements. It does not state the nature of any exclusion, denial, or discrimination on the basis of disability. Nor does it suggest how the state-law requirement that boarding houses be licensed would relate to such a claim.
>
> In short, Count 3 does not identify a potential legal basis for liability and it does not state facts that plausibly suggest that a defendant is liable.

(6AC Op. at *7.)

In the 7AC, Plaintiffs have added allegations, *inter alia*, that the BRBH employs a "double standard regarding handicapped people," in that "[t]hey enforce fire codes . . . but they have no interest in barrier free accommodation," that inspections of multifamily dwellings by the BRBHS are "fraudulent" because they are conducted only for purposes of collecting fines and not to assist with barrier free accommodations,  and that "[b]y failing to provide barrier free access to residents in need they are forcing these people into nursing homes and other facilities that may be overly expensive or too restrictive for an ordinary lifestyle." (7AC Count 3, ¶¶ 9–11.) Plaintiffs claim that "[t]he State and its agents should be providing owners with viable means to access renovations to provide for barrier free needs," and further allege that "the State of New Jersey represents a collusion with property owners to allow and support the presence of violation of the federal regulations regarding barrier free and handicapped access." (*Id.* ¶¶ 11–12.) In short, the new allegations clarify that Plaintiffs seek to hold the Commissioner liable for not compelling—or at least not assisting with and funding—boarding house owners' compliance with the ADA in conjunction rooming house inspections to enforce fire code and other requirements.

Factual allegations in support of the essential Title II elements are still lacking. The 7AC fails to allege, *inter alia*, that Plaintiffs are qualified disabled individuals. It fails to allege that they have suffered discrimination on the basis of disability. It fails to allege the required causal connection. In short, the 7AC

unsuccessfully attempts to graft a nebulous claim regarding ADA enforcement onto the factual allegations that rooming houses were closed based on fire code and safety violations. For these reasons alone, the Title II claim would fail.

Nevertheless, I consider these *pro se* allegations at greater length in an attempt to determine whether an ADA claim can be gleaned from them. I find that it cannot; the 7AC essentially states generalized and somewhat self-contradictory grievances to the effect that the State should enforce Title II (or perhaps that it should *not* enforce Title II unless it is prepared to fund the required improvements).

The allegations in Count 3 of the 7AC fail to connect the State rooming house licensing regime to any Title II ADA claim. The allegation may signify that the State, in enforcing its regulations regarding rooming/boarding houses, or the local authorities, in enforcing fire and building codes, should be taking advantage of a golden opportunity to enforce the ADA as well. But again the Plaintiffs point to no specific legal entitlement to some particular action by the Commissioner. As the Department of Justice explains:

> The enforcement of state codes is the responsibility of state or local officials – usually through plan reviews and building inspections. The ADA relies on the traditional method of civil rights enforcement through litigation in federal courts. Local officials do not have the authority to enforce the ADA on behalf of the federal government.

https://www.ada.gov/certcode.htm.

The new allegations in the 7AC do not specify the source of any ADA-related liability or duty. Plaintiffs complain that the Commissioner has taken a punitive, rather than a constructive, approach; it would be better, they imply, if the Commissioner gave property owners money to fund ADA compliance, instead of fining them for failing to with rooming house regulations. The source of such a duty is not plausibly alleged. Nor does the 7AC contain any facts suggesting how Plaintiffs were personally affected by these broad allegations that the Commissioner, for example, colludes with property owners, or fails to

18

piggy-back on local fire code enforcement with equally robust ADA enforcement. In short, these are all generalized complaints about administrative policies and priorities; they are not claims that a specified violation of the ADA concretely damaged any plaintiff.

Plaintiffs' brief cites *Tumpson v. Farina*, 95 A.3d 210 (N.J. 2014) for the proposition that New Jersey residents are entitled to substantive rights; that the Title III regulation codified at 42 U.S.C. § 12183 "is included in the requirements for building and renovating structures in New Jersey"; and thus that residents are entitled to "rights conveyed by this title." (Pl. Br. 6–7.)[12] In *Tumpson*, the New Jersey Supreme Court cited the State Civil Rights Act and held that "the City Clerk deprived plaintiffs of their substantive right of referendum when he refused to file their referendum petition." *Id.* at 230. Nothing about that state law case saves these allegations, which fail to set forth facts that would translate to a claim under Title II of the ADA.

In sum, Plaintiffs' 7AC fails to rectify the deficiencies identified in my previous 6AC opinion. Count 3 fails to state a claim, whether for injunctive relief or damages, under Title II of the ADA.[13]

---

[12]    Plaintiffs claim N.J.A.C. 5:23-6 requires conformity with Title III, 42 U.S.C. § 12183, but they do not specify the subsection or cogently explain why the fact that the Commissioner does not enforce a certain state law constitutes discrimination in violation of Title II. (*See* Pl. Br. 9–11.) To the extent the Plaintiffs are trying to compel the Commissioner's enforcement of the ADA or commensurate state regulations, they are seeking to compel the state to act or else seeking to enforce state laws, either of which would fall outside the ambit of the ADA itself and would fail to overcome the Eleventh Amendment bar to this court's jurisdiction.

[13]    It follows that I need not proceed further in determining whether Congress's purported abrogation of sovereign immunity in Title II is valid as applied to the Commissioner's alleged misconduct. *See Bowers*, 475 F.3d 524, 553–55.

       Although I have determined that the 7AC fails to state a claim under Title II of the ADA, Plaintiffs submit in their brief in opposition to the Commissioner's motion that Plaintiffs are seeking to enforce ADA Title III regulations as "substantive rights" by way of a § 1983 claim. (Pl. Br. 11–12.) Plaintiffs do not cite controlling authority in support, and the 7AC does not specifically allege such a theory. The ADA scheme is a well-considered one, in which injunctive relief is explicitly authorized or withheld in accordance with the nature of the particular cause of action granted. I therefore would

b.  Injunctive Relief under § 1983 and the FHA

As discussed, the Court has subject matter jurisdiction only as to Plaintiffs' § 1983 and FHA claims against the Commissioner, insofar as they seek prospective relief—in practical terms, an injunction.

To obtain injunctive relief, the court must consider whether: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Coffelt v. Fawkes*, 765 F.3d 197, 201 (3d Cir. 2014) (quoting *Shields v. Zuccarini,* 254 F.3d 476, 482 (3d Cir. 2001)).

As to injunctive relief, the allegations of ongoing harm are quite thin; the buildings, for example, seem to have been closed or demolished.[14] The Complaint does, however, allege ongoing effects such as denial of access, deterioration of the Garfield property, foreclosure proceedings, and so on.

There are many reasons, relating to standing or the merits, why the remaining claims might not survive scrutiny. The State, however, focused primarily on matters such as the preclusive effect of my prior ruling or *res judicata,* grounds which I have found inapplicable. The merits of the claims have not been thoroughly briefed. I do note, however, that the Complaint, it is true, asserts a bewildering variety of half-expressed theories.

Most if not all would probably be doomed by a showing that the properties were closed based on basic health and safety violations, as opposed

---

not imply a blanket injunctive cause of action for noncompliance with the ADA under §1983.

[14]      *See, e.g.,* 7AC Count 6, ¶ 5 ("Heine's home in Garfield was closed on the day of the joint inspection by the DCA and the local fire official . . . . The home was never reopened, and inclusively has sustained damages when the municipality boarded up the building and left open the windows in the upper part of the home."); *id.* Count 6, ¶ 17 ("Peri-Okonny's building was demolished by the City of New Brunswick and there was no effort by the DCA or the City to make the necessary repairs for the damages that their actions caused.")

to any concern unique to regulation of rooming houses or their occupants. We are, however, at the pleading stage, and consideration of such factual matters would be premature.

**Conclusion**

For the reasons stated *supra*, the Commissioner's motion (No. 83) to dismiss the 7AC will be GRANTED IN PART and DENIED IN PART. As to claims for injunctive relief against the Commissioner pursuant to § 1983 and the FHA, the motion to dismiss is denied. All other claims against the Commissioner, the DCA, the BRBHS, and "other NJ state agencies and entities" are dismissed.

A separate order will issue.

Dated: December 1, 2016

_____
KEVIN MCNULTY
United States District Judge