**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ELLEN HEINE, et al.,**<br><br>       **Plaintiffs,**<br>v.<br><br>**COMMISSIONER OF THE DEPARTMENT OF COMMUNITY AFFAIRS OF THE STATE OF NEW JERSEY, et al.,**<br><br>       **Defendants.** | Civ. No. 2:11-5347 (KM)(JBC)<br><br>**OPINION** |

Defendant JPMorgan Chase Bank, N.A. (the "Bank") holds a mortgage on the properties of two of the plaintiffs, Unita Peri-Okonny and Ellen Heine. The Bank is named only in Count 7 of the Seventh Amended Complaint ("7AC", ECF no. 81). Now before the Court is the Bank's motion (ECF no. 109) to dismiss the Seventh Amended Complaint for lack of jurisdiction and failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6). For the reasons stated herein, the Bank's motion to dismiss will be granted.

## I. APPLICABLE STANDARD

### A. Rule 12(b)(1)

The Bank's motion seeks, in part, to dismiss the complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) challenges may be either facial or factual attacks. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *Common Cause of Penn. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). It "review[s] only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court."

1

*Common Cause of Penn. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).

A factual attack, on the other hand, permits the Court to consider and weigh evidence extrinsic to the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *holding modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). Such a factual attack "does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

The Rule 12(b)(1) component of the Bank's motion, as filed, relies only on the Complaint and documents properly considered on a Rule 12(b)(6) motion to dismiss. It would therefore be treated as a facial challenge.

The plaintiffs' response, however, makes factual assertions extrinsic to the allegations of the Complaint. The Bank's reply suggests that those facts suggest a lack of Article III standing. I consider this as an alternative basis for dismissal, and to that limited extent, I will treat the Rule 12(b)(1) motion as a factual challenge.

### B.     Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the

complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Where the plaintiffs are proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

## II. COUNT 7 OF THE SEVENTH AMENDED COMPLAINT

Plaintiffs claim, *inter alia*, that the DCA improperly enforced fire codes, leading to, *inter alia*, condemnation of properties and the impairment of the plaintiffs' ability to make their mortgage payments. This complaint is now in its seventh iteration, and I have written more than one opinion in this case. Thus I will not review the facts and allegations at length. I assume familiarity with my prior Opinion ("Op.", ECF no. 97) and Order (ECF no. 98) granting the most recent motion to dismiss filed by the Department of Community Affairs of the State of New Jersey (the "DCA"), by its Commissioner. Briefly, that Opinion (in conjunction with earlier rulings) resulted in dismissal of all claims against DCA

except a claim for injunctive relief under 42 U.S.C. § 1983 and the Fair Housing Act ("FHA").

This, however, is the first motion brought by defendant JP Morgan Chase Bank, N.A., which had not appeared in the case previously.[1] I therefore review the allegations against the Bank.

The Bank is named only in Count 7, and is the sole defendant in that Count. The substantive allegations of Count 7 are as follows:

> 1.  Plaintiff repeats the allegations of the First, Second, Third Fourth, Fifth and Sixth Counts as if they were again set forth herein.
>
> 2.  JP Morgan Chase Bank N.A. holds a mortgage to the homes owned by both Unita Peri-Okonny and Ellen Heine.
>
> 3.  JP Morgan Chase Bank, N.A. received a judgment against Unita Peri-Okonny for almost $400,000 pursuant to filing a foreclosure. If the Bank is allowed to sell the property at a sheriff's sale, Unita will have lost her entire investment and she will receive a bill for the deficiency. The actions by the DCA and their agents have violated the one to four family rider on the property.
>
> 4.  JP Morgan Chase Bank proceeded in foreclosure pursuant to an amended notice of intent to foreclose which was approved in the state Courts. Unita Peri-Okonny motioned in the State Court to give notification to the JP Morgan Chase Bank, NA that the unfortunate circumstances of her property were due to the actions of the state and the municipality. However, the Court ruled against her and allowed the matter to proceed to Final Judgment.
>
> 5.  The Court's procedures in Foreclosure are designed for properties that are mortgaged but that are still able to be used. The problems created by the workings of the DCA that are negative to properties such as Unita Peri-Okonny's are difficult to factor into the foreclosure process.
>
> 6.  The Banks representatives certify that they have completed a diligent inquiry regarding the pleadings in foreclosure with reference to

---

[1] As to the Bank, my prior Opinion stated only the following:

> *Count 7*: This Count is directed only against J.P. Morgan Chase Bank, as mortgagee of the Heine and Peri-Okonny properties. J.P. Morgan Chase Bank has not been served and has not appeared in this action. Count 7 is not involved in this motion, and I do not discuss it further.

(Op. at 6)

4

the property. However, the bank's representative that spoke with Unita had no notations in the file regarding the problems with the demolished home on the property and the continuation of property taxes for the home.

7. Unita Peri-Okonny contacts the Chase loan office to give the information regarding the occurrences in New Brunswick that had caused the destruction of her home. The Bank's office was not aware of the information that Unita Peri-Okonny gave them. They were paying taxes for a home that was no longer on the property. Unita expressed an interest to rebuild the home and said that she had been unable to get the cooperation from either the bank or the municipality to be able to rebuild. The bank represented that they would be willing to work with Ms. Peri-Okonny to try to create a means toward the resolution of her problems regarding the property.

8. Ellen Heine's Garfield property has a mortgage from JP Morgan Chase Bank, N.A. She is unable to use the property and to collect any rent for the use of the property. This is the result of the actions of the DCA and their agents. Heine's property could go into foreclosure if the closure continues. The allegations of the DCA have violated the one to four family rider that is recorded with the mortgage.[2]

9. The posting of the DCA that one and two family owner occupied dwelling are exempted from all of the NJAC codes in 5.70-1[3] are the reason why the actions of the DCA are financially negative and improper with reference to the homes of Unita Peri-Okonny, Ellen Heine, and Ann Schildknecht.

(7AC pp. 16–17)

Count 7 seeks the following relief, all of it injunctive:

(a) an injunction to stay all proceedings or future proceedings in foreclosure;

---

[2] The meaning is obscure. A 1-4 family rider is required in a Fannie Mae-compliant mortgage to ensure adequate security in regard to certain rental properties by providing for, *inter alia,* assignment of rents to the mortgagee in the event of default. *See* https://www.fanniemae.com/singlefamily/riders-addenda.

[3] Attached to the Complaint as exhibits are a Notice of Imminent Hazard from the New Jersey Bureau of Fire Prevention (ECF no. 81 at 20), and a copy of DCA Fire Code Enforcement Bulletin 2010-2, stating that owner-occupied, one or two family dwellings are exempt from certain fire code enforcement under NJAC 5:70-1.5 (ECF no. 81 at 27). The claim seems to be that enforcement would be inconsistent with the one-to-four-family rider to the mortgages.

(b) to prevent a sheriff's sale of Peri-Okonny's property pending resolution of this action;

(c) to restrain the Bank from "negative credit reporting" based on the missed mortgage payments or foreclosure;

(d) such other and further relief as the Court sees fit.

## III. DISCUSSION

I am obligated to first consider whether this Court possesses subject matter jurisdiction. I then proceed to the substantive grounds for dismissal.

### A. Rooker-Feldman

The *Rooker-Feldman* doctrine, which is of jurisdictional stature, bars any attempt to use the federal trial courts as a court of appeal from state court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). *Rooker-Feldman* thus operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005).

*Rooker-Feldman* has four essential prerequisites:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

The complaint on its face recites that there is a prior State-court judgment of foreclosure against Peri-Okonny. (7AC Count 7 ¶ 3) And she, in

6

particular, seeks to negate that state court judgment by enjoining a sheriff's sale in the hope of renegotiating with the Bank what has already been adjudicated by the State court.[4]

Still, it appears that other aspects of Peri-Okonny's claim in Count 7 (involving credit reporting, for example) might be regarded as independent. As for Heine, it does not appear that there is a prior judgment of foreclosure at all; she seeks an injunction against a future foreclosure. I conclude, therefore, that *Rooker-Feldman* does not wholly bar this Court's jurisdiction, and go on to consider the Bank's further arguments for dismissal.[5]

---

[4] To be clear, as to the Bank the judgment of foreclosure is indeed a prior judgment, as alleged in Count 7. The final judgment of foreclosure is dated May 20, 2015. Although this action was filed against the DCA in 2011, the Bank was first named as a defendant in the Seventh Amended Complaint. The Seventh Amended Complaint was filed on April 7, 2016.

A copy of the judgment of foreclosure is attached to the Bank's papers. (ECF no. 109-2 at 19) I may properly consider it on a motion to dismiss without converting a facial challenge into a factual challenge or a summary judgment motion. *See In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999); *see generally* Fed. R. Evid. 201 (judicial notice).

[5] I consider an alternative argument based on *res judicata*. State *res judicata* law governs the preclusive effect of a state judgment. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir.1999); *see also Allen v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 415 (1980). New Jersey claim preclusion law, like federal law, has three essential elements: (1) a final judgment on the merits; (2) the prior suit involved the same parties or their privies; and (3) the subsequent suit is based on the same transaction or occurrence. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412, 591 A.2d 592, 599 (1991) (state law); *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (federal law). New Jersey issue preclusion law, like federal law, bars litigation of facts fully litigated and actually determined in a prior action, even one involving a different claim or cause of action. *See Tarus v. Pine Hill*, 189 N.J. 497, 520 (2007). The issue must (1) be identical to the one previously litigated; (2) have been actually litigated; (3) have been asserted in a case that went to judgment on the merits; and (4) have been essential to the prior judgment; (5) be asserted against the same party, or one in privity. *See Twp. Of Middletown v. Simon*, 193 N.J. 228, 236 (2008).

New Jersey has an additional, somewhat broader *res judicata* doctrine known as the entire controversy rule. The entire controversy rule emphasizes, not just claims within the scope of the prior judgment, but all *claims and parties* that a party *could have joined* in a prior case based on the same transaction or occurrence. The entire controversy doctrine thus "requires a party to bring in one action 'all affirmative

### B. Standing/Mootness

The Bank argues that Peri-Okonny and Heine lack Article III standing to pursue some or all of their claims. As to Peri-Okonny only, I agree.

The essential requirement of standing is that the plaintiff has suffered or is suffering "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992). Related to standing is the doctrine of mootness—the idea that if the plaintiff ever possessed a concrete injury, he or she possesses it no longer. It is axiomatic that Article III of the Constitution limits the jurisdiction of federal courts to live "cases" and "controversies," requiring "an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055 (1997). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, ___ U.S. ___, 133 S. Ct. 1523, 1528 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S. Ct. 1249 (1990)). In order for a claim to be moot, however, it must be "impossible for a court to grant any effectual relief." *Knox v. Serv. Employees*, 567 U.S. 298, 132 S. Ct. 2277, 2287, 183 L. Ed. 2d 281 (2012); *see also Blanciak v. Allegheny*

---

claims that [it] might have against another party, including counterclaims and cross-claims,' and to join in that action 'all parties with a material interest in the controversy,' or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509, 513 (1995)).

The Bank asserts in the alternative that the final judgment of foreclosure bars most or all of the claims of Peri-Okonny under doctrines of *res judicata*. For reasons similar to those stated in the *Rooker-Feldman* Section, III.A, *supra*, I agree. In this action, Peri-Okonny here seeks to assert claims that were or could have been asserted against the Bank, whether as issues in defense or as counterclaims, in the foreclosure action.That particular *res judicata* analysis, however, would add little to the *Rooker-Feldman* analysis.

8

*Ludlum Corp.*, 77 F.3d 690, 698–699 (3d Cir. 1996) ("If developments occur during the course of adjudication that . . . prevent a court from being able to grant the requested relief, the case must be dismissed as moot.").

As to Peri-Okonny, a fundamental standing/mootness objection has emerged. In her brief, plaintiff stated that "Chase wrote-off the mortgage of Peri-Okonny and vacated the foreclosure. Therefore this defendant's arguments that the foreclosure was first filed in state court and issues of lack of federal jurisdiction over certain credit matter is a moot point." (Pl. Brf. 5) Citing this statement, the Bank argued in its reply that standing was lacking.

I would not ordinarily base a dismissal on an unsupported statement in a plaintiff's brief. But the Bank, as it turns out, agrees. In a letter filed yesterday, October 9, 2017 (ECF no. 126), counsel for the Bank acknowledged that

> Chase charged-off the loan of Peri-Okonny, and issued a Discharge of Mortgage . . . recorded with the Middlesex County Clerk's Office on October 7, 2016 in Book 1385, Page 0193.
>
> To date, the Final Judgment entered against Peri-Okonny in [the state foreclosure] has not been vacated, although a Chase intends to do so. Notably the Writ of Execution was returned as "unsatisfied" by the Middlesex County Sheriff's office, so Chase has not sought to enforce the Final Judgment.

(Letter, ECF no. 126 at 1)

Peri-Okonny's "requested relief" in Count 7 is an injunction stopping a sheriff's sale of Peri-Okonny's property, pursuant to the judgment of foreclosure.[6] The Bank has already discharged the mortgage, is in the process of vacating the judgment, has not satisfied the writ of execution, and confirms that it will not pursue its rights any further. Thus Peri-Okonny currently lacks standing, and the matter is moot.

As to Heine's property, the Bank has a different standing argument. The original mortgagor, it says, was a Dr. Gilbert. A number of machinations

---

[6] I set aside for a moment the third form of relief, an injunction against reporting any negative credit information.

9

followed. Suffice it to say that there is a State court order awarding Heine title to the property provided that she satisfied the $46,000 mortgage, and granting her the option either to assume and discharge the mortgage or else to sell the property. When she failed to do either, the court entered an order compelling her to sell the property, which she has not done. (Bank Reply 4 (citing *Gilbert v. Heine*, No. A-0145-14T4, 2017 WL 370904 (N.J. Super. Ct. App. Div. Jan. 25, 2017)). Thus, says Chase, it is not clear how any action by itself could prejudice Heine any further.

I disagree. As to Heine, Count 7 seeks an injunction against any future foreclosure. A judgment of foreclosure could lead, not just to a court order saddling Heine with the mortgage obligation, but to a forced sheriff's sale of the property. Assuming that Heine has a valid claim, an injunction would thus be of some value to her. Her claim was not entirely mooted by the State court's order.

### C. Res Judicata

I turn my attention to the *res judicata* effect of a prior federal-court judgment. This requires dismissal of the claims of Heine, and is an alternative basis for dismissal of the claims of Peri-Okonny.

Plaintiffs Peri-Okonny, Heine, and a shifting array of co-plaintiffs have filed multiple lawsuits asserting similar claims. I focus on one, in which the Bank is named as a defendant. On November 20, 2015 (five months prior to the filing of the Seventh Amended Complaint), a group of plaintiffs, including Peri-Okonny and Heine, filed suit in federal court against a group of defendants, including the Bank and DCA. *Heine, et al. v. Director of Codes and Standards, et al.*, No. 15-cv-8210 (ES/MAH) (the "2015 Action"). The final judgment in that 2015 Action—which itself gave preclusive effect to judgments in prior State court actions—bars the claims against the Bank here.[7]

---

[7] As to the 2015 Action, the Bank asserted the related doctrines of comity and the first-filed rule, because that action had not yet proceeded to judgment. Because there has now been a final judgment in the 2015 Action, I apply a full *res judicata* analysis.

As to a prior federal judgment, standards of claim preclusion and issue preclusion are well established. A *res judicata* defense may be adjudicated on a motion to dismiss, where the pleadings and documents properly considered on a Rule 12(b)(6) motion suffice. *See M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010); *see also Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Federal claim preclusion requires (a) a final judgment on the merits in a prior suit involving (b) the same parties or their privies and (c) a subsequent suit based on the same causes of action. *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S. Ct. 645, 649 n. 5 (1979)). Federal issue preclusion requires (a) that the issue be identical to an issue previously adjudicated; (b) that the issue have been actually litigated; (c) that the determination of the issue was necessary to the prior judgment; and (d) that the party against whom preclusion is now asserted had a full and fair opportunity to litigate the issue. *Henglein v. Colt Indus.*, 260 F.3d 201, 209 (3d Cir. 2001). As to a prior state judgment, *res judicata* standards are similar. See n.6, *supra*.

### 1. Judgment in the 2015 Action

The 2015 Action, filed in the United States District Court for the District of New Jersey, was assigned to the Hon. Esther Salas, U.S.D.J. In an Order and Opinion ("Salas Op.") filed on September 11, 2017, Judge Salas dismissed the complaint with prejudice.[8]

Judge Salas first focused on the allegations against defendants other than the Bank. Those other defendants are all entities, including the DCA, responsible for the enforcement of state and municipal fire and building codes.[9] (Salas Op. 3–4) The plaintiffs in the 2015 Action, including Heine and Peri-

---

[8] Judge Salas's Opinion and Order are ECF nos. 78 and 79 on the docket of the 2015 Action. The Bank has filed a copy of that Opinion on the docket of this case. (ECF no. 124 at 5) A copy of the complaint in the 2015 Action is attached to the Bank's papers on the motion to dismiss. (ECF no. 109 at 29)

[9] I omit ancillary claims against Bergen County DYFS, which are not relevant here.

11

Okonny, asserted that their buildings were erroneously classified as rooming houses and subjected to the standards of the New Jersey Rooming and Boarding House Act of 1979, including code enforcement and administrative inspections. (*Id.* 4) They assert that such inspections, violation notices, and other acts have resulted in the loss of the use and profit of their properties. (*Id.* 4–5)

Judge Salas related a history of prior actions involving some of the same plaintiffs and defendants, in which similar claims were asserted. (Id. 6–9 (summarizing *Schildknecht v. Twp. Of Montclair*, No. 13-7228 (D.N.J.) (the "7228 Action"); *Fabics v. City of New Brunswick*, No. 13-6025 (D.N.J.) (the "6025 Action"); *Fabics v. City of New Brunswick*, No. 14-2202 (D.N.J.) (the "2202 Action").[10] Those actions resulted in final judgments in favor of the defendants. It does not appear that the Bank was named as a defendant in those actions, however.

Judge Salas first held that principles of *res judicata* barred the claims in the 2015 Action that were asserted against the municipalities of New Brunswick and Montclair. (Op. 12–18)

More pertinently, Judge Salas held that *re judicata* barred the claims of Heine and Peri-Okonny, *et al.*, against DCA. (Op. 18–22) The claims against DCA, as Judge Salas described them, were (a) that it exercised inadequate oversight as to the municipalities' code enforcement activities; and (b) that it violated the constitution by the manner in which it enforced, or promulgated regulations under, the Rooming and Boarding House Act of 1979, the Uniform Construction Code, and the Uniform Fire Code. Those claims, held Judge Salas, had already been decided between the same parties (including Heine and Peri-Okonny) by final judgments entered in the prior State court actions.

---

10 Also pending before Judge Salas are two consolidated cases, both captioned *Heine v. City of Garfield*, Civ. Nos. 11-2655 and 12-4171 (D.N.J.).

12

More pertinently still, Judge Salas dismissed the claims of the 2015 Action as against the Bank. The allegations in the 2015 Action involving the Bank are contained in two paragraphs:

> 6. Heine, Peri-Okonny, and Schildknecht all continue to be billed for taxes on both the home and the land even though they are not allowed to use them. Peri-Okonny's home was demolished by the City of New Brunswick and she has a Final Judgment of Foreclosure from JPMorgan Chase Bank N.A. in the amount of $400,000 which includes several years of tax payments for the building even after the City demolished it. Heine also pays a mortgage on her property to JP Morgan Chase Bank N.A. The actions of the City and the State in the closures of these buildings is a violation of the "one to four family rider" that is signed with the mortgage and could trigger acceleration of the Mortgage with yet another property to be foreclosed in the State of New Jersey.
>
> * * *
>
> 4. In the case of Heine and Peri-Okonny the lender is JPMorgan Chase Bank, N.A. The bank is not a participant in the interaction with the town so they are not aware of the related problems until the home falls into foreclosure. At that time the bank has lost princip[al], interest, and tax payments. The degraded quality of the property makes financial recovery difficult. The bank is not always equipped with programs that allow for help to such a distressed homeowner.

(Op. 22, quoting 2015 Action Compl. Count I ¶ 6; Count IV ¶ 4).

Judge Salas held that these allegations did not state a claim against the Bank. As to the Bank, the complaint alleged that there was a mortgage, a default, and a foreclosure. The circumstances *leading* to the default are alleged to involve DCA's overstepping the bounds of proper code enforcement. The Bank, however, is explicitly alleged to have had no knowledge of or involvement in the actions of DCA and the other authorities. As to the Bank, then, the complaint failed to meet the minimal pleading standards of Fed. R. Civ. P. 8. Indeed, Judge Salas was uncertain whether a cause of action against the Bank was even intended; the Bank, she wrote, might merely have been named as a party necessary for full relief should plaintiff prevail on its other claims. (Op. 23–24)[11]

---

[11] Judge Salas also held, in the alternative, that the *Rooker-Feldman* doctrine barred claims arising from the judgment of foreclosure against Peri-Okonny. (Op. 23 n.24) I have reached a similar conclusion. *See* Section III.A, *supra*.

Judge Salas also stated alternative grounds to dismiss the Complaint as against, *inter alia*, DCA, including lack of standing and improper joinder of the independent claims of multiple plaintiffs. (Op. 24–29) Particularly in light of the multiple opportunities to amend the complaints in the prior actions, Judge Salas found that amendment would be futile, and dismissed the complaint in the 2015 Action in its entirety, with prejudice.

### 2. Preclusive effect of the 2015 Action

The judgment in the 2015 Action precludes the claims against Chase in this action.

First, the judgment in the 2015 was final, on the merits, and expressly entered with prejudice.

Second, the causes of action are essentially the same. The claim against the Bank in Count 7 of the Seventh Amended Complaint is that the mortgage defaults (and, in Peri-Okonny's case, foreclosure) were somehow the result of the code enforcement efforts of DCA and others. The judgment in the 2015 Action disposes of the underlying claim against DCA that the authorities' fire code enforcement was illegitimate, on which any claim against the Bank depends. More to the point here, it directly disposes of the claims against Chase itself. In neither case is the Complaint very clear about exactly what cause of action is being asserted against the Bank. Vagueness, however, provides no refuge against claim preclusion. The same "cause of action" does not require identity of legal theories, but turns on the essential similarity of the underlying events giving rise to the various legal claims. *Atholone*, 746 F.2d at 983 (citing *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982)).

The claims against the Bank in the 2015 Action are shorter than, but essentially identical in substance to, Count 7 of the Seventh Amended Complaint in this action. Here, as before, the plaintiffs allege that their buildings are one or two family residences that should not have been subject to the Rooming and Boarding House Act of 1979, and that they were exempt from the statewide uniform fire code. The 2015 Action, like this one, alleges that Heine and Peri-Okonny have lost the use and profit of their properties as a

result of improper code enforcement; that they have nevertheless been required to pay property taxes; that Peri-Okonny has been subjected to a final judgment of foreclosure; that the Bank has mortgages on the properties; that the actions of the State (and local) officials somehow contravene the 1–4 family riders contained in the mortgages; and that this all resulted in plaintiffs' default and foreclosure by the Bank, which is not equipped to help the distressed owner.[12]

Third, the parties, for these purposes, are identical. Heine and Peri-Okonny appear as plaintiffs, and DCA and the Bank as defendants, in both cases.[13]

Judge Salas's dismissal of the claims against the Bank, which was final and explicitly entered with prejudice, precludes the claims against the Bank in Count 7 of the Seventh Amended Complaint in this action.

### D. Failure to State a Claim

Finally, I consider in the alternative whether—assuming there is jurisdiction, and setting aside *res judicata*—the allegations of Count 7 of the Seventh Amended Complaint state a claim upon which relief may be granted. The allegations against the Bank, which are quoted in full at Section II, *supra*, do not state any intelligible, identifiable claim. They certainly do not do so with the specificity required by *Twombly* and *Iqbal, supra*.

To begin with, no cause of action is specified. The reader is left to guess what statutory violation, tort, or other wrong is being alleged.

As to Peri-Okonny, Count 7 alleges that there is a foreclosure judgment against her and that, if there is a sheriff's sale, she "will have lost her investment." That of course may be true; it is probably true of a majority of

---

[12] For the moment, I set Count 7's prayer for relief, which also demands that negative credit information not be reported.

[13] The other plaintiffs include some of Heine's tenants, owners of other buildings, and so on. Of the nine plaintiffs in the Seventh Amended Complaint, five are also named as plaintiffs in the 2015 Action. All of the defendants named in the Seventh Amended Complaint are named in the 2015 Action.

15

mortgage foreclosures. No wrongful act by the Bank or recognized cause of action is suggested by those facts.

Peri-Okonny and Heine imply that their properties would never have gone into default but for the code enforcement activities of DCA and the local authorities. Once again, that does not amount to a cause of action against the Bank. The holder of a mortgage is not required to forgive the debt because the actions of third parties put the mortgagor in a financial fix.

Indeed, Peri-Okonny acknowledges that the Bank had no knowledge of those enforcement activities, and even continued to pay property taxes after the building had been damaged by fire and demolished. Once again, no cause of action against the Bank is suggested by these facts.

Plaintiffs allege that the DCA's position is in violation of the 1-4 family rider in their mortgages. The sense seems to be that the DCA is erroneously treating the buildings as rooming houses—*i.e.,* that these are in reality one or two family, owner-occupied homes that are not subject to statewide fire code standards. Even if this allegation is accepted, it does not suggest any fault on the part of the Bank.

Finally, the Bank at some point allegedly expressed willingness to work with Peri-Okonny, who wished to rebuild. It is implied that this never occurred. Once again, there is no claim suggested.

Heine, too, alleges that she is unable to use her property or collect rents as a result of the DCA's improper code enforcement.

In short, no cause of action is stated. The complaint does not identify any wrongdoing by the Bank at all.

Nor do the factual allegations support the injunctive relief sought. Nothing in Count 7 supports a claim that either plaintiff has a legal right to halt foreclosure or a sheriff's sale. Peri-Okonny's property is already subject to a final judgment of foreclosure. Neither plaintiff denies that her mortgage is in default.

The demand to restrain the Bank from "negative credit reporting" is supported by no facts. To the extent a claim under the Fair Credit Reporting

Act might have been intended, see 15 U.S.C. § 1681, there are no supporting facts. There is no clear allegation, for example, that any reporting of missed payments or the fact of foreclosure would be inaccurate.

For these alternative reasons, too, the Complaint of Peri-Okonny and Heine will be dismissed as against the Bank.

## CONCLUSION

Accordingly, for the reasons stated in the foregoing Memorandum Opinion, the motion (ECF no. 109) of defendant JPMorgan Chase Bank, N.A., to dismiss the Seventh Amended Complaint is GRANTED, and the Seventh Amended Complaint is dismissed in its entirety as against defendant JPMorgan Chase Bank, N.A., only.

To the extent this dismissal is jurisdictional, it is final, but without prejudice. To the extent this dismissal rests on *res judicata* and substantive grounds, it is with prejudice.

Dated: October 10, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.