| | |
|---|---|
| **ELLEN HEINE, et al.** | |
| **Plaintiffs,** | Civ. No. 2:11-5347 (KM)(JBC) |
| **v.** | |
| **COMMISSIONER OF THE DEPARTMENT OF COMMUNITY AFFAIRS OF THE STATE OF NEW JERSEY et al.,** | **OPINION** |
| **Defendants.** | |

Plaintiff Ellen Heine sues, along with others, as an owner, occupant, or person otherwise interested in a building at 515 Van Bussum Avenue in Garfield, New Jersey (the "Property"). Familiarity with my several prior opinions on dispositive motions is assumed, and this Opinion should be read in conjunction with them. (*See* ECF nos. 50, 74, 97, 103, 127, 143.)

Now before the Court is the motion for summary judgment (ECF no. 164) filed by the Commissioner of the Department of Community Affairs of the State of New Jersey (the "Commissioner" of "DCA"). The current operative pleading is the Seventh Amended Complaint ("7AC", ECF no. 87). As to the Commissioner of DCA, my most recent substantive rulings dismissed most of the 7AC. (*See* Opinion ("Dismissal Op.", ECF no. 97), and Order ("Dismissal Order", ECF no. 98); Memorandum and Order denying motion for reconsideration ("Reconsideration Op."), ECF no. 103.) What remain are certain claims under 42 U.S.C. § 1983 and the Fair Housing Act for injunctive relief, asserted against the Commissioner and focused on the Garfield Property. It is to those remaining injunctive claims that the Commissioner's motion for summary judgment is directed.

For the reasons stated herein, the Commissioner's motion for summary judgment is granted.

## I.   Background

### A. Prior Court Decisions

Some prior litigations involving the Garfield Property (and others) are relevant. I begin by quoting my summary of two prior State court decisions from the Dismissal Opinion:

> The first decision is Heine's appeal from separate court orders which, after trial, fined her $1500 for refusing to allow warrantless inspections, and fined her $1750 for maintaining three hazardous conditions in and around her Garfield building. *State v. Heine*, 424 N.J. Super. 48, 35 A.3d 691 (N.J. Super. Ct. App. Div. 2012). The Appellate Division agreed with Heine that the local ordinance, as applied, was unconstitutional insofar as it punished Heine's refusal to permit a warrantless inspection. However, it rejected Heine's challenge to the Garfield property maintenance code as vague, and likewise rejected her claim of selective enforcement.
>
> The second decision involves the DCA's determination that plaintiff Heine's Garfield building was an unlicensed rooming house:
>
> > Petitioner Ellen Heine appeals from the August 11, 2011 final decision of the Commissioner of the New Jersey Department of Community Affairs (Department). The Commissioner adopted the initial decision, dated July 14, 2011, of the Administrative Law Judge (ALJ), Barry E. Moscowitz.
> >
> > This action concerns a property where petitioner and five or six other persons resided. The property, on Van Bussum Avenue in Garfield, had been cited for violations of the construction code and fire safety laws. In September 2010, the Commissioner notified petitioner that she was in violation of the Rooming and Boarding House Act of 1979, N.J. Stat. Ann. § 55:13B–1 to –16. Petitioner requested and received a hearing, which took place before the ALJ on January 8, March 15, and May 17, 2011, followed by the submission of briefs.
> >
> > In his initial decision, the ALJ determined that the property was a "rooming house" under N.J. Stat. Ann. § 55:13B–3(h), and that petitioner was its primary owner under N.J. Stat. Ann. § 55:13B–3(f),

but that she did not have a valid license to operate a
rooming house, and no licensed operator was available
as required under N.J. Stat. Ann. § 55:13B–8.
Pursuant to that provision, the ALJ deemed petitioner
to be the operator, found her responsible for the failure
to comply, see N.J. Stat. Ann. § 55:13B–10(a), and
determined that a $5,000 civil penalty was appropriate
under N.J. Stat. Ann. § 55:13B–10(b).

*Heine v. Dep't of Cmty. Affairs, Bureau of Rooming & Boarding
House Standards*, No. A-2113-11T1, 2013 WL 1759919, at *1 (N.J.
Super. Ct. App. Div. April 25, 2013). The Appellate Division
affirmed DCA's final decision that Heine failed to comply with a
state statute requiring a license to operate a rooming house and
assessing a $5,000 civil penalty. It considered Heine's argument
that the State's definition of a rooming house is discriminatory and
unconstitutional, but found it lacked sufficient merit to require
discussion in a written opinion.

(Dismissal Op. at 2–4)[1]

A third case, *Heine v. City of Garfield*, Civ. No. 11-2655, 2016 WL
8674693 (D.N.J. Dec. 23, 2016), likewise involves the Garfield Property at issue
in this case. It is brought on behalf of Ms. Heine and purportedly on behalf of
"Tenants at 515 Van Bussum Ave., Grieco and Ruppert," as well as other

---

[1]     Less directly relevant but still pertinent is a decision by now-retired District
Judge Faith S. Hochberg of this Court. *Schildknecht v. Township of Montclair*, Civ. No.
13-7228, 2014 WL 835790 (D.N.J. March 4, 2014). There, Ann Schildknecht and Ellen
Heine filed a complaint against the DCA and the Township of Montclair for damages
and injunctive relief. "[T]he Court denied Plaintiffs' request for a preliminary injunction
on the basis that Plaintiffs did not show a likelihood of success on the merits—indeed,
the Township's filings showed that Schildknecht's deplorable and dangerous living
conditions necessitated emergency intervention by the police, the fire department, and
animal control." Id. at *1.

Under those circumstances, the Court held, the plaintiff had alleged no cause of
action against the Township of Montclair under § 1983, as there was no
unconstitutional municipal policy or custom sufficient to impose liability under *Monell
v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). As to the FHA claim, the court
found no allegation of discrimination in connection with the sale or rental of housing.
Claims that defendants' actions denied plaintiffs the use of housing simply did not
invoke the "'exercise of any right granted or protected by section 3603, 3604, 3605, or
3606 of this title.' 42 U.S.C. § 3617." 2014 WL 835790 at *3. DCA was never served,
however, and the action was dismissed against it without prejudice.

parties. That case, which challenges the City's warrantless inspections of the Property, remains pending. The Hon. Esther Salas of this Court has dismissed certain of the claims, and a dispositive motion is briefed and pending.

A fourth decision, also by District Judge Salas, has been entered in *Heine v. Dir. of Codes & Standards*, Civ. No. 15-8210, 2017 WL 3981135 (D.N.J. Sept. 11, 2017) (Copy at Ex. H, ECF no. 164-3 at 50) (the "8210 Action"). Noting that the same plaintiffs, including plaintiffs here, had filed multiple, repetitive actions, Judge Salas dismissed the complaint in the 8210 Action with prejudice.[2] I focus on the aspects of her decision that are most relevant here.

The claims in the 8210 Action involved properties in Montclair and New Brunswick, as well as the Garfield Property that is the subject of this action. Six of the twenty-one named plaintiffs either were tenants of or had a financial connection to the Garfield Property. Defendants included the Commissioner of DCA.[3]

Judge Salas first dismissed claims involving the towns of Montclair and New Brunswick on *res judicata* grounds.[4] (Slip Op. 12–18) She then turned to the allegations against DCA.

---

[2]     These actions are but a sample of the many real estate related actions involving Ms. Heine in state and federal court.

[3]     Some now-familiar names appear in the 8210 Action's list of 21 *pro se* plaintiffs: Ellen Heine, Christopher Grieco, Kara Grieco, Keri Burke, Ann Schildknecht, Andrew Tuscano, Richard Holler, Ruben Williams, Ruthann Hughes, Unita Peri-Okonny, Theodoro Pagan, Thomas Combs, Solimon Youssef, Paul Dean, Susan Miller, Peter Martens, Frank Bright, Nadeem Shahidi, Wendell Sellers, Robert Dow, and Joseph Fabics.

The 8210 Action also contained a claim against JP Morgan Chase Bank that was virtually identical to the one asserted in Count 7 of the 7AC here (now dismissed). (*See* ECF no. 127.) I ignore claims against Bergen County DYFS, which are not relevant here.

[4]     In doing so, she noted the multiplicity of prior actions brought by Heine, but focused on three: *Schildknecht v. Twp. Of Montclair,* No. 13-7228 (D.N.J.) (discussed at n.1, *supra*); *Fabics v. City of New Brunswick*, Civ. No. 14-2202, 2015 WL 10936119 (D.N.J. Jan. 14, 2015); and *Fabics v. City of New Brunswick*, No. 13-6025, 2015 WL

4

As to DCA, Judge Salas again applied *res judicata*. (Slip. Op. 18–23) The claims against the Commissioner of DCA, she found, had been finally adjudicated in prior actions relating to the properties in Montclair and New Brunswick. Those claims against DCA, as Judge Salas described them, were (a) that DCA exercised inadequate oversight as to the municipalities' code enforcement activities; and (b) that it violated the Constitution by the manner in which it promulgated or enforced regulations under the Rooming and Boarding House Act of 1979, the Uniform Construction Code, and the Uniform Fire Code. Those claims, held Judge Salas, had already been decided in DCA's favor and against the plaintiffs, including Heine, by final judgments entered in the three actions cited. (*See* n.4, *supra*.)

The 8210 Action's addition of Garfield plaintiffs (such as the Griecos), Judge Salas held, did not negate the *res judicata* effect of the earlier Montclair and New Brunswick judgments. The federal complaint in the 8210 Action, she wrote, did not "identif[y] any additional conduct by the DCA" that would distinguish the current complaint from the prior ones. (Slip op. at 21-22) Thus the 8210 Action's claims as to DCA had already been adjudicated.

At any rate, Judge Salas wrote, the allegations against the Commissioner of DCA involving, *e.g.,* the Griecos and Burke (and therefore the Garfield Property) failed to meet Rule 8's pleading standards. (Slip Op. 20 n.23). The Complaint in the 8210 Action alleged generally that DCA somehow exercised inadequate oversight and violated the Constitution in relation to rooming house, fire safety, and construction regulations. (Slip Op. 19) It further alleged that the Griecos and others "experienced negativity in housing due to single status" because their residence had been incorrectly designated as a rooming house. They allegedly sought to reoccupy the Garfield Property, which the City

---

5167153 (D.N.J. Sept. 3, 2015), *aff'd*, 674 F. App'x 206, 210-11 (3d Cir. 2016). All resulted in final judgments in favor of the defendants.

On review, I notice that my Opinion granting the motion to dismiss of JP Morgan Chase contains a stray erroneous reference to those prior cases as "State court actions." (*See* ECF no. at 12.) The substance of the Opinion is unaffected.

had closed five years previously based on an Imminent Hazard Notice. Nothing about these allegations, wrote Judge Salas, came close to factually alleging a federal claim. (Slip Op. 20 n.23).[5]

Judge Salas carefully analyzed the grounds for dismissal and concluded, particularly in light of the plaintiff's many prior related actions, that amendment would be futile. The 8210 Action was therefore dismissed with prejudice.

### B. Procedural History

In this action the plaintiffs, Ellen Heine, *et al.*, identify themselves as, among other things, "occupants and tenants and beneficiaries" of a building at 515 Van Bussum Avenue in Garfield, New Jersey (the "Property"). (7AC ¶ 1) It is alleged that the Property was improperly regulated as a rooming house by the DCA, and/or improperly closed based on code violations and fire hazards. Plaintiffs filed the 7AC against the Commissioner of DCA in his official capacity.

Governmental entities also named as defendants were the Bureau of Rooming and Boarding House Standards ("BRBHS") (a subdivision of DCA); the Bergen County Division of Youth and Family Services ("DYFS"); and "other NJ state agencies and entities." All claims have been dismissed against those defendants. (*See* Dismissal Opinion, ECF no. 97; Dismissal Order, ECF no. 98.) Also named as a defendant in one count was J.P. Morgan Chase, N.A. I granted Chase's motion to dismiss the 7AC. (*See* Opinion and Order, ECF nos. 127, 128; Order and Opinion on Reconsideration, ECF nos. 142, 143.)[6] The only remaining defendant, then, is the Commissioner of DCA.

---

[5]     In addition, she concluded, the plaintiffs' grievances were not attributed to an official policy or custom under *Monell v. Dep't of Soc. Servs. Of N.Y.*, 436 U.S. 658, 690–91 (1978). (Slip Op. 20 n.23; *see also id.* at 19 n.20.) The complaint did not identify any relevant custom or policy with specificity, or trace the alleged harms to such a policy. (Slip Op. at 25–26)

[6]     The State of New Jersey itself, named as a defendant in earlier iterations of the Complaint, is not named in the 7AC. The 7AC will also be dismissed as against the John Doe and ABC defendants, who have never been identified.

### C. Surviving Allegations of the 7AC

In my prior Dismissal Opinion (ECF no. 97) I noted that all claims for damages, except for one under the Americans with Disabilities Act ("ADA"), had earlier been dismissed for lack of jurisdiction under the Eleventh Amendment. The 7AC, however, added claims for declaratory and injunctive relief. For the most part these, too, failed to survive Eleventh Amendment scrutiny; the only claims as to which I found subject matter jurisdiction were federal-law claims against the Commissioner of the DCA for injunctive relief under 42 U.S.C. § 1983, Title II of the ADA, and the Fair Housing Act ("FHA"). I then held that the complaint failed to state a cause of action under the ADA, but did state a claim for injunctive relief under section 1983 and the FHA.

As to surviving issues, for ease of reference I quote a relevant portion of the Dismissal Opinion:

>  a. Injunctive Relief under § 1983 and the FHA
>
>  As discussed, the Court has subject matter jurisdiction only as to Plaintiffs' § 1983 and FHA claims against the Commissioner, insofar as they seek prospective relief—in practical terms, an injunction.
>
>  To obtain injunctive relief, the court must consider whether: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Coffelt v. Fawkes*, 765 F.3d 197, 201 (3d Cir. 2014) (quoting *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).
>
>  As to injunctive relief, the allegations of ongoing harm are quite thin; the buildings, for example, seem to have been closed or demolished. [fn. omitted] The Complaint does, however, allege ongoing effects such as denial of access, deterioration of the Garfield property, foreclosure proceedings, and so on.
>
>  There are many reasons, relating to standing or the merits, why the remaining claims might not survive scrutiny. The State,

however, focused primarily on matters such as the preclusive effect of my prior ruling or *res judicata,* grounds which I have found inapplicable. The merits of the claims have not been thoroughly briefed. I do note, however, that the Complaint, it is true, asserts a bewildering variety of half-expressed theories.

Most if not all would probably be doomed by a showing that the properties were closed based on basic health and safety violations, as opposed to any concern unique to regulation of rooming houses or their occupants. We are, however, at the pleading stage, and consideration of such factual matters would be premature.

(Dismissal Op. pp. 20–21)

## II. **Applicable Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2509–10 (1986); *Kreschollek v. S. Stevedoring Co.,* 223 F.3d 202, 204 (3d Cir. 2000).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact." *In re Bressman,* 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir. 1991)). That is, the moving party must demonstrate that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Id.*

On the other hand, "with respect to an issue on which the nonmoving party bears the burden of proof … the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23, 106 S. Ct. at 2552).

To demonstrate the existence of a genuine issue, a party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Likewise, "unsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rather, a party must present evidence sufficient to create a triable issue. *Anderson*, 477 U.S. at 248–49, 106 S. Ct. at 2510; *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). By evidence, the Rule means "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In construing such evidence, however, the court must draw inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49, 106 S. Ct. at 2510. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

### III. Discussion

This motion for summary judgment is brought by the only remaining defendant, the Commissioner of DCA, in relation to the only remaining claims,

9

those for injunctive relief under 42 U.S.C. § 1983 and the Fair Housing Act. In Sections III.A, B, and C, I discuss the issues raised by the Commissioner. In Section III.D, I raise *sua sponte* other fundamental flaws in the plaintiffs' claims, chiefly the *res judicata* bar and failure to establish the essential elements of a substantive claim under § 1983 or the FHA.

### A. Parties

Throughout this case, the most active *pro se* plaintiffs have purported to speak for other persons named as plaintiffs. On March 27, 2018, Magistrate Judge Clark ordered that any named plaintiff wishing to continue "shall either file their own motion and/or opposition to Defendant's forthcoming [dispositive] motion or shall submit a notice of joinder in a co-Plaintiff's motion in writing." (ECF no. 160) Failure to do so, wrote Judge Clark, would constitute "confirmation of that Plaintiff's non-opposition to the dismissal of their claims." (*Id.*)

Only four of the named plaintiffs have joined in the opposition to the Commissioner's motion or otherwise signaled their continued participation in this lawsuit. They are: Ellen Heine, Chris Grieco, Ann Schildknecht, and Unita Peri-Okonny. Preliminarily, then, the action will be dismissed as to the nonresponding plaintiffs: Caitlin and Therese Ruppert, Joseph Fabics (deceased), Ryan Moskowitz, Paul Wondowsky, and John F. Malone.

### B. The Commissioner is Entitled to Judgment Because the Property was Closed by the City of Garfield Based on Hazardous Conditions

Plaintiffs Heine, *et al.*, are suing the Commissioner, claiming that the State's regulation of the Garfield property as a "rooming house" is illegal. I set that issue aside until the following section, however, because a major premise of the argument—that the Commissioner as regulator of rooming houses is responsible for closing the Property and evicting the occupants—is factually unsustainable. As I pointed out in my prior Dismissal Opinion (quoted at pp. 6–7, *supra*), "[m]ost if not all [of the remaining claims] would probably be doomed by a showing that the properties were closed based on basic health

10

and safety violations, as opposed to any concern unique to regulation of rooming houses or their occupants." That showing has now been made. The City of Garfield (and not the DCA) closed the Property because it was in a hazardous condition (and not because Heine was operating an unlicensed rooming house).

The Commissioner casts the argument as one of Article III standing—*i.e.,* that no injury cognizable under 42 U.S.C. § 1983 or the FHA is traceable to the Commissioner or the DCA. Whether viewed as a standing issue or as failure to state a claim, however, the issue is the same.[7]

Section 1983 imposes liability only on a "person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States." 42 U.S.C. § 1983. Thus "a plaintiff must demonstrate a defendant's 'personal involvement in the alleged wrongs. A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.,* 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)). *Cf. Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978) (no *respondeat superior* liability under § 1983).

The Federal Housing Act addresses a different set of concerns:

The FHA makes it unlawful to do any of the following on the basis

---

[7]      The Commissioner perhaps takes on a heavier burden than necessary. The Supreme Court has held that FHA liability is confined by a "zone of interests" analysis, and does not extend to the limits of Article III standing. *Bank of Am. Corp. v. City of Miami, Fla.,* 137 S. Ct. 1296, 1307–08 (2017). As to what was formerly termed the "zone of interests" component of prudential standing, the substantive and standing analyses merge. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S. Ct. 1377, 1387 (2014) (framing the zone-of-interests test as asking whether a particular plaintiff "falls within the class of plaintiffs" authorized to sue under a particular law). Here, the Commissioner argues that the plaintiff has not stated a cause of action under the relevant statutes, but also more narrowly that even if she had, the DCA is not the party responsible for her claimed injury.

of "race, color, religion, sex, handicap, familial status, or national origin": "refuse to sell or rent ... a dwelling," § 3604(a); discriminate in the "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith," § 3604(b); "make, print, or publish ... any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination," § 3604(c); "represent to any person ... that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available," § 3604(d); "induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of" certain characteristics, § 3604(e); or discriminate in the provision of real estate or brokerage services, §§ 3605, 3606.

*Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1308–09 (2017). *See also Schildknecht v. Township of Montclair*, Civ. No. 13-7228, 2014 WL 835790 (D.N.J. March 4, 2014); *Easthampton Ctr. v. Township of Easthampton*, 155 F. Supp. 2d 102, 110 (D.N.J. 2001). A plaintiff need not necessarily be a member of the protected class. *See id.* at 114 (citing 42 U.S.C. § 3602; *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103 n.9 (1979)). Such a plaintiff must still be "aggrieved," however, in the sense of suffering an injury traceable to the defendant's violation of the FHA. No such connection is drawn by the factual submissions of the plaintiffs.

The plaintiffs have attempted to attribute the closure of their Property to the DCA's (allegedly invalid) exercise of regulatory authority over rooming houses. The Notice of Imminent Hazard and Order to Vacate, however, were issued by the City of Garfield, not the DCA. (DSOF ¶¶ 8, 9) The City was authorized to do so by its municipal Code. The Code empowers the local fire department and fire safety official to enforce the Uniform Fire Safety Act and New Jersey Uniform Fire Code within the City of Garfield. *See* City of Garfield, N.J. Code §§ 142-1, 142-2. The Code also "establishe[s] in the City of Garfield a State Uniform Construction Code enforcing agency to be known as "Department of Inspections,' consisting of a Construction Official . . . [and] Fire Subcode Official." *Id.* § 114-1(A). The Notice of Imminent Hazard and Order to

Vacate state explicitly that the issuing authority is the City of Garfield, and that the tenants shall vacate because the Property contains imminent hazards. (DSOF ¶¶ 8, 9)

There is no doubt about what those imminent hazards were; they are listed in the Notice. They include the following:

- Lack of smoke detectors in second and third floor dwelling units
- Front stairway and hallway off front porch obstructed
- Bedrooms and door going to second floor had prohibited surface locks
- Lack of second means of egress from certain areas
- Non-rated doors in bedrooms and corridors of second and third floor
- No sprinkler system[8]
- Other precautions against fire spreading needed in porch and basement.

(DSOF ¶ 9 & Ex. C)[9] Those conditions were the basis of an order by the City of Garfield—not DCA—that the Property be vacated. The Order to Close and Notice to Vacate were signed and issued by the relevant City of Garfield Construction Official and Fire Official. (*See* Def. Exs. C & D, ECF no. 164-3)

The plaintiffs dispute the DCA's determination that the property was unlicensed, but *de facto* a rooming house. That determination was factually supported and upheld by the State appellate court, as discussed in section III.C, *infra*. But even if incorrect, that determination was not the basis for closing the Property or evicting the occupants.

In an attempt to attribute the closure to the DCA, the plaintiffs have

---

8    As to this particular violation, DCA concedes that *if* the Property had been an ordinary dwelling, and not a rooming house, it would not have been required to have a sprinkler system. For the reasons discussed in the following section, however, it was properly designated a rooming house. And in any event, DCA can and does concede the point *arguendo,* because the remaining conditions were more than sufficient to justify the City of Garfield's action.

9    On September 14, 2010, when the Notices were issued by the City of Garfield, a municipal complaint was also filed against Heine based on excessive garbage and rubbish on the property. (DSOF ¶ 6) A Summary Report issued by DCA after the joint inspection also related that the tenants stated that the Property was "infested by bed bugs." (DSOF ¶ 6)

made conclusory allegations of an oversight, agency, or other relationship between DCA and the City of Garfield. They have not produced any evidence, however, that DCA or its Commissioner, either by implementation of a policy or by direct action, brought about the City's closure of the Property in violation of § 1983 or the FHA.

The plaintiffs generally cite the DCA's statutory authority to enforce the Uniform Fire Safety Act (UFSA). *See* N.J. Stat. Ann. §§ 52:27D-202(a), 203(a). DCA accepts that the State has concurrent enforcement authority as to all buildings, "other than owner-occupied building used exclusively for dwelling purposes and containing fewer than three dwelling units." N.J. Stat. Ann. § 52:27D-204(a). The argument is inconsequential, however. While the state *may* step in and exercise authority subject to certain procedures, *see* N.J. Stat. Ann. § 52:27D-204(b), it did not do so in connection with the Notice of Imminent Hazard and Order to Vacate, which were issued by the City of Garfield.[10]

The plaintiff points out that the DCA and the City of Garfield performed a joint inspection of the property pursuant to a state court injunction. (DSOF ¶4)[11] Still, the evidence in the summary judgment record is undisputed that the imminent hazards listed in the Notice were the basis for the simultaneous Order to Vacate, which was issued by the City, not DCA.

It follows that the plaintiffs have no claim against DCA based on the Order to Vacate or their eviction from the Property.

## C. In Any Event, the Property was Properly Designated as a Rooming House on a Nondiscriminatory Basis by DCA

In the alternative, however, I consider the plaintiffs' argument that DCA

---

[10]     If the DCA had ordered the premises to be vacated, the paper trail would look very different. An Order would have issued pursuant to the authority of the Commissioner, with copies sent to relevant county and municipal officials. *See* N.J. Stat. Ann. § 55:13B-11(a). That did not occur.

[11]     On January 22, 2010, Judge Ellen Koblitz, then P.J. Ch., ordered that Heine be "enjoined from interfering, preventing, obstructing, or otherwise delaying access to or inspection of [the Property] . . . by any authorized State or local fire, inspection, building or code official." (DSOF ¶ 4)

improperly asserted its authority to regulate the Property as a "rooming house." To be clear, the Property was not closed down for violations pertaining to its status as a rooming house as such. *See supra.* The evidence is uncontradicted that the City closed down the Property and that the DCA's citation of rooming house violations led only to a $5000 penalty, a circumstance irrelevant to these claims for prospective injunctive relief.

The DCA's authority to regulate rooming houses derives from the Rooming and Boarding House Act ("RBHA"), N.J. Stat. Ann. § 55:13b-1 *et seq.*. A rooming house is one "which contains two or more units of dwelling space arranged or intended for single room occupancy." N.J. Stat. Ann. § 55:13b-3(a), (h). A "unit of dwelling space" is defined in turn as "any room, rooms, suite, or portion thereof, whether furnished or unfurnished which is occupied or intended, arranged or designed to be occupied for sleeping or dwelling purposes by one or more persons." N.J. Stat. Ann. § 55:13b-3(j).[12]

On September 17, 2010, following an inspection of the Property, the Commissioner notified Heine that she was running a rooming house in violation of the RBHA and was liable for a civil penalty. In August 2011, the Commissioner issued a final decision that Heine was operating an illegal rooming house which she had created by converting a former three-family home and adding bedrooms.[13] (DSOF ¶ 15) The decision of ALJ Barry E.

---

[12] A boarding house is defined as "any building, together with any related structure, accessory building, any land appurtenant thereto, and any part thereof, which contains two or more units of dwelling space arranged or intended for single room occupancy, exclusive of any such unit occupied by an owner or operator." N.J. Stat. Ann. § 55:13B-3(a).

The DCA is authorized to inspect both rooming and boarding houses to ensure the health, safety, and welfare of the persons living there. N.J. Stat. Ann. §§ 55:13B-2, 13B-6, 13B-15.

[13] In response to the summary judgment motion, the plaintiffs argue that if this were truly a rooming house, then the City's property tax records (listing it as a two-family home) should have been changed. (Pl. Opp. Br. 6, ECF no. 166) Any inaccuracy in the property tax records may have resulted from the authorities' failure to observe the apparently illegal conversion of the building. At any rate, as regards the DCA's regulatory authority, the City's failure to amend property tax records is irrelevant.

Moscowitz, dated July 11, 2011, is attached to the Commissioner's summary judgment papers. (DSOF ¶ 14 & Ex. F, ECF no. 164-3 at 32)

Judge Moscowitz, after conducting a hearing, rendered findings of fact and conclusions of law. In finding that the Property was a rooming house, he considered many factors. The Property had seven rooming units.[14] The rooms of Kara and Christopher Grieco, Anthony and Louis Pizzi, and DeMarco were furnished and arranged for single occupancy. At least some units had padlocked doors. They were not offered for a limited tenure only. The rooms had no independent cooking or sanitary facilities, and the second and third floor contained a common bathroom and kitchen. (DSOF ¶ 14) Citing case law, Judge Moscowitz further discussed factors such as communal bathrooms and kitchens, security locks on individual rooming units, separate payment per unit, and different occupancy dates. Heine, as owner, collected rent, made certain rules about occupancy, and posted a sign that no one should admit any official, police officer, or member of the Gilbert family,[15] without her permission. She was deemed to be the operator of a rooming house under N.J. Stat. Ann. § 55:13B-10(a). A civil penalty of $5000 was assessed based on multiple violations, overlapping the earlier health and safety violations found by the City.

The Superior Court of New Jersey, Appellate Division, upheld the ALJ's decision in an unpublished decision. (*Heine v. Dep't of Cmty. Affairs*, Docket No. A-2113-11, 2013 WL 1759919 (App. Div. April 25, 2013), *certif. denied*, 217 N.J. 52 (2014). Copy at Ex. G, ECF no. 164-3 at 47)) Endorsing the reasoning

---

[14]     A "rooming unit" is defined in the regulations as "a unit of dwelling space forming a single habitable unit used or intended to be used for living and sleeping, but not for cooking or eating purposes." N.J.A.C. 5:27-2.1.

[15]     The original mortgagor and prior owner of the Property was a Dr. Gilbert. A number of machinations culminated in a State court order awarding Heine title to the Property provided that she satisfied Gilbert's $46,000 mortgage, and granting her the option either to assume and discharge the mortgage or else to sell the property. When she failed to do either, the court entered an order compelling her to sell the property, which she has not done. *See Gilbert v. Heine,* No. A-0145-14T4, 2017 WL 370904 (N.J. Super. Ct. App. Div. Jan. 25, 2017).

of the ALJ, the Appellate Division rejected Ms. Heine's argument that the evidence was defective, that the Property did not meet the physical description of a rooming house, and that the DCA had overstepped its authority. The Appellate Division also considered Heine's contentions that the DCA's actions were discriminatory in rooming house matters, that the standard for unrelated single people is discriminatory, and that the actions of the DCA violated due process and property rights. It rejected those contentions without further discussion because they lacked sufficient merit.

It is thus *res judicata* that the Property was correctly deemed a rooming house based on its physical and other characteristics, on a non-discriminatory basis. Even viewing the evidence afresh, no other conclusion is possible. So even if the DCA had ordered the Property closed down and the occupants evicted—which it did not—its actions could not be attacked on the basis of the Property's not properly being subject to regulation as a rooming house.

### D. Other Issues

For the reasons stated above, DCA's motion for summary judgment must be granted. In the alternative, however, my review of the record reveals other grounds that would suffice.

#### 1. Res judicata as to § 1983 and FHA claims

The underlying § 1983 and FHA claims are themselves barred by *res judicata.*

Federal claim preclusion requires (a) a final judgment on the merits in a prior suit involving (b) the same parties or their privies and (c) a subsequent suit based on the same causes of action. *United States v. Athlone Indus., Inc.,* 746 F.2d 977, 983 (3d Cir. 1984) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S. Ct. 645, 649 n. 5 (1979)). Federal issue preclusion requires (a) that the issue be identical to an issue previously adjudicated; (b) that the issue have been actually litigated; (c) that the determination of the issue was necessary to the prior judgment; and (d) that the party against whom preclusion is now asserted had a full and fair opportunity to litigate the issue.

*Henglein v. Colt Indus.*, 260 F.3d 201, 209 (3d Cir. 2001).

Judge Salas's decision in the 8201 Action, summarized at pp. 4–6, *supra*, was a final judgment on the merits which dismissed the plaintiffs' claims with prejudice. *Heine v. Dir. of Codes & Standards*, Civ. No. 15-8210, 2017 WL 3981135 (D.N.J. Sept. 11, 2017) (Copy at Ex. H, ECF no. 164-3 at 50) (the "8210 Action"). The plaintiffs in that action included Heine and most or all of the plaintiffs here, and the defendants included the Commissioner of DCA. The complaint in the 8210 Action, as Judge Salas found, encompassed claims (a) that DCA exercised inadequate oversight as to the municipalities' code enforcement activities; and (b) that it violated the Constitution by the manner in which it enforced, or promulgated regulations under, the Rooming and Boarding House Act of 1979, the Uniform Construction Code, and the Uniform Fire Code. Judge Salas held that those claims had already been decided in DCA's favor and against the plaintiffs, including Heine. Those final judgments specifically related to properties located in the towns of Montclair and New Brunswick. As to the statewide policies of the DCA, however, Judge Salas explicitly or impliedly held that the issues pertaining to Garfield were the same. In the alternative, with respect to the Garfield Property in particular, Judge Salas held that the plaintiffs' assertions of improper assertion of authority to regulate rooming houses, discrimination based on family status, and the like, failed to state a claim because, *inter alia,* plaintiff did not link them factually to any illegal or unconstitutional action of DCA.

Also relevant is the prior decision of the New Jersey Superior Court, Appellate Division, in *Heine v. Dep't of Cmty. Affairs*, Docket No. A-2113-11, 2013 WL 1759919 (App. Div. April 25, 2013), *certif. denied*, 217 N.J. 52 (2014). Copy at Ex. G, ECF no. 164-3 at 47) In that decision, discussed at pp. 2–3 & 15–17, *supra*, the Appellate Division rejected Heine's contentions that the DCA had overstepped its authority, that the DCA's actions were discriminatory in rooming house matters, that the regulations discriminate against unrelated

single people, and that the DCA violated due process and property rights.[16]

*Res judicata* as to the merits of the § 1983 and FHA claims, then, would furnish an alternative basis for an award of summary judgment.

### 2. Failure to establish § 1983 and FHA claims

Lurking behind all of the foregoing is a simple failure to adduce sufficient evidence in support of the underlying claims under FHA and § 1983.

The requisites of a typical FHA claim have been usefully summarized as follows:

> A plaintiff states a prima facie case of discrimination under the FHA by showing either intentional disparate treatment or disparate impact. *United States v. Branella*, 972 F. Supp. 294, 298 (D.N.J.1997). A plaintiff can show discriminatory intent through direct or indirect evidence. *Id.* In the absence of direct evidence, however, the Court must apply the burden shifting approach set forth in *McDonnell Douglas Corp. v. Green*, which describes the proper framework for evaluating an intentional disparate treatment claim under Title VII of the Civil Rights Act ("Title VII"). *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. 792, 802 (1973)). Under this approach, the plaintiff must demonstrate that (1) he or she is a member of a protected class, (2) he or she applied for and was qualified to rent a particular unit, (3) he or she was rejected or otherwise treated adversely, and (4) the unit remained available after the rejection or adverse treatment. *See Branella*, 972 F.Supp. at 299 n. 7. "Sufficient evidence with respect to these factors raises a rebuttable presumption of discriminatory intent and shifts the burden to the defendant, who must articulate a legitimate non-discriminatory reason for rejecting the prospective tenants." Id. If

---

[16]     As to the State court litigation, actual adjudication of the same claims and issues would not technically have been required. State *res judicata* law governs the preclusive effect of a state judgment in federal court. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999); *Allen v. McCurry*, 449 U.S. 90, 96 (1980). New Jersey claim and issue preclusion law is similar to federal law. *See Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 412 (1991) *Twp. Of Middletown v. Simon,* 193 N.J. 228, 236 (2008). New Jersey, however, has a somewhat broader *res judicata* doctrine known as the entire controversy rule. The entire controversy rule emphasizes, not just claims within the scope of the prior judgment, but all *claims and parties* that a party *could have joined* in a prior case based on the same transaction or occurrence. *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280 (1995)).

> the defendant proffers such a non-discriminatory reason, the
> burden shifts back to the plaintiff to offer some evidence indicating
> that the defendant's reason was actually a pretext. *Id.*

*Ewing Citizens for Civil Rights, Inc. v. Twp. of Ewing*, Civ. No. 05-1620 MLC, 2007 WL 2065832, at *4 (D.N.J. July 13, 2007).

The plaintiffs' FHA arguments, which cite the changing contours of family life, have always been vague. Read very generously, they seem to start from the premise that rooming houses (with their smaller, single-room-occupancy units) would tend to attract the unmarried, or smaller families. (No evidence is offered as to the extent to which that is true.) The idea, at any rate, seems to be that by imposing fire safety and other requirements on rooming houses (as defined by State law), the DCA is somehow discriminating against certain family configurations: for example, people living alone, or unrelated persons in nontraditional families.[17] The "familial status" that is a protected category under the FHA, however, is that of having one or more individuals under the age of 18 domiciled with a parent or guardian.[18] Even in such cases, however, policies of general application that only indirectly impact family status will be upheld. *See, e.g., Mountain Side Mobile Estates P'ship v. Sec'y of Hous. & Urban Dev.*, 56 F.3d 1243, 1251 (10th Cir. 1995) (discussing three-person occupancy limit, but upholding finding that it did not violate FHA); *Fair*

---

[17]    According to Heine, one of the occupants, Chris Grieco, was accompanied by his "three children and extended family." (ECF no. 166 at 8 ¶ 5) Other units apparently housed single individuals.

[18]    (k) "Familial status" means one or more individuals (who have not attained the age of 18 years) being domiciled with—

>    (1) a parent or another person having legal custody of such individual or individuals; or

>    (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years

42 U.S.C. § 3602(k).

*Housing Advocates Ass'n, Inc. v. City of Richmond Heights, Ohio*, 209 F.3d 626 (6th Cir. 2000). FHA claims found to be viable have typically involved facially family-averse policies, such as an apartment building's express refusal to rent upper-floor apartments to families with children. *See United States v. Garden Homes Management Corp.*, 156 F. Supp. 2d 413, 423–26 (D.N.J. 2001). There is no such policy here; moreover, the only "discriminatory" action alleged is protection from fire and unsanitary conditions.

The justification for health, safety, and fire regulations here, whether state or local, is obvious, and it is neutral as to family status. The concerns of the RBHA have nothing to do with the family arrangements of the building's occupants.[19] The actions taken against the Garfield Property in *this* case—to the extent attributable to the DCA at all, *see supra*—were taken for non-discriminatory health and safety reasons, as demonstrated by uncontradicted record evidence. The cited violations (lack of smoke detectors, obstructed exits, locked units, etc.) would not fall more heavily on families with children than on others. Indeed, no particular impact on families, disparate or otherwise, appears in the record—except perhaps in the trivial sense that families, just like single persons, may have to be relocated from properties found to be unsafe. These are not class-specific restrictions that "did not apply to those

---

[19]     The RBHA is "remedial legislation . . . necessary to provide for the health, safety and welfare of all those who reside in rooming and boarding houses in this State." N.J.S.A. 55:13B-2. Regulations promulgated under the Act ensure "the protection and care of the residents of rooming houses, boarding houses and residential health care facilities[.]" *Id.* The Act's enactment was "prompted by 'a number of boarding home . . . fires [which resulted in fatalities, and [which attracted] public attention . . . to the conditions that existed in these facilities." *Mkt. St. Mission v. Bureau of Rooming & Boarding House Standards*, 110 N.J. 335, 341 (citation omitted), *appeal dismissed*, 488 U.S. 882 (1988); *see* N.J.S.A. 55:13B-1 to -21. The state legislature found that the residents of such facilities were "predominantly elderly, disabled and poor, many of whom need social, personal and financial services, protection from building hazards and protection from unscrupulous and predatory neighbors." N.J.S.A. 55:13B-2; *see Salvation Army v. Dep't of Cmty. Affairs*, 919 F.2d 183, 186 (3d Cir. 1990) (noting that the Act "goes far beyond this initial motivation to ensure fire safety and safeguard the health of the residents; in the course of examining the problem, the legislature learned that residents of rooming and boarding houses are frequently exploited by the operators of the facilities in a number of ways.").

outside the protected classes." *Curto v. A Country Place Condominium Ass'n, Inc.,* Civ. No. 16-5928, 2018 WL 638749 (D.N.J. Jan. 31, 2018) (rejecting challenge to sex-segregated hours for swimming pool in apartment complex). And the only "exclusion" is the closing down of buildings unfit for habitation by anyone, married or single. The plaintiffs fail to allege, let alone prove, how anything about this enforcement related to the occupants' family status.

The § 1983 claim is, if anything, flimsier. Based on the same allegations, it simply posits violations of the "rights of individuals" and lists a number of constitutional provisions. (*E.g.,* 7AC ¶ 12) No specific claim of violation of a particular constitutional provision is specified. The "discrimination" alleged seems to revolve around evolving family standards, but no recognized claim is stated. And even these vague claims are not specifically tied to the family status of any occupant of the Property.[20] As Judge Salas found in relation to the earlier, similar claims, the plaintiff asserts generalized grievances about the running of government, untethered to specific claims of constitutional violations and a resulting cognizable, concrete injury. *See* 8210 Action, Slip Op. at 27 (citing, *inter alia, Fabics,* 2015 WL 5167153 at *6).

For these alternative reasons, then, summary judgment would be appropriate even if this action surmounted the threshold bar of *res judicata.*

## CONCLUSION

For the reasons stated above, the Commissioner's motion for summary judgment (ECF No. 164) is GRANTED. A separate order will issue.

Dated: September 18, 2018

KEVIN MCNULTY
United States District Judge

---

[20]     In referring to unrelated individuals living together, Heine may be echoing the U.S. Supreme Court case of *Village of Belle Terre v. Boraas,* 416 U.S. 1 (1974). That case, however, rejected a challenge to a local zoning ordinance that limited the number of unrelated individuals who could occupy a dwelling.